ALGERNON BLAIR INDUSTRIAL CONTRACTORS, INC., a corp., Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY, Defendant.

Civ. A. No. 81–733–N.

United States District Court, M. D. Alabama, N. D.

June 1, 1982.

---

Capell, Howard, Knabe & Cobbs, William D. Coleman, Montgomery, Ala., for plaintiff.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Associate Gen. Counsel, Robert E. Washburn, Richard B. Campbell, Knoxville, Tenn., for defendant TVA.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., for Dept. of Justice.

## MEMORANDUM OPINION

HOBBS, District Judge.

This cause is a Freedom of Information Act (FOIA) suit brought by Algernon Blair Industrial Contractors, Inc. against the Tennessee Valley Authority (TVA). TVA, through its attorneys, answered the complaint and plaintiff moved for an in camera inspection of the documents sought under the FOIA. The Court ordered the documents submitted for inspection on March 31, 1982, and TVA filed the disputed documents with the Court on March 30, 1982. On March 31, 1982, the Department of Justice (DOJ) filed a motion to strike the appearance of the TVA attorneys and to substitute the appearance of the DOJ attorneys as the authorized representatives of TVA.

On April 6, 1982, this Court granted a stay of all proceedings in this action until April 19 and directed DOJ and TVA to confer and resolve between them the issue of who had the authority to represent TVA in this action. On or about April 16, both DOJ and TVA informed the Court that they had been unable to resolve the dispute. After allowing time for further negotiation, the Court set the motion for a hearing on May 25, 1982. Briefs and exhibits were submitted, oral argument heard, and the motion to strike of the Attorney General is now ready for decision.

The primary contention of DOJ is that control over all litigation involving the United States or its agencies, unless Congress has expressly directed otherwise, is vested in the Attorney General, and DOJ contends that Congress has not so directed with respect to TVA. The basis of this contention is the provision of Congress that

"except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party...."
28 U.S.C.A. § 519 (1968)

*See also United States v. California,* 332 U.S. 19, 26–29, 67 S.Ct. 1658, 1662–63, 91 L.Ed. 1889 (1946).

The attorneys for TVA argue that the TVA Act of 1933, as amended, does give the Board of Directors of TVA control over TVA litigation, that such control has been exercised by the TVA Board since TVA's inception, and for forty-nine years Congress and the Department of Justice have recognized this control. The TVA Act of 1933 provides for a three-member Board of Directors which "shall direct the exercise of all the powers of the Corporation." 16 U.S.C.A. § 831a(a) (1974). The powers of the Corporation (TVA) include the powers to "sue and be sued" and all other powers "necessary or appropriate for the exercise of the powers herein specifically conferred...." 16 U.S.C.A. § 831c(b), and (g) (1974). The Act further provides that:

"... the Corporation is authorized to make such expenditures and to enter into

such contracts, agreements, and arrangements, upon such terms and conditions and in such manner as it may deem necessary, *including the final settlement of all claims and litigation by or against the corporation.*" (emphasis added) 16 U.S.C.A. § 831h(b) (1974) (as added by 1941 amendment)

TVA argues that Congress' express vesting of control over the powers to sue and be sued and to settle claims and litigation in the Corporation and its Board is a clear, unambiguous Congressional direction that the Board, not the Attorney General, has control over TVA litigation.

The attorneys for both parties filed excellent briefs raising numerous points in support of their argument. This opinion will not discuss each point; instead, the Court will focus the discussion on the evidence which it found most persuasive.

The attorney for DOJ argues forcefully that the language of the TVA Act purporting to vest independent litigation authority is inadequate, and that Congress in later statutes has employed more specific language in granting such authority to a government agency or corporation. However, the Court need not find that the statutory language granting authority to TVA to have its own litigating authority is as clear as TVA's attorney contends. At a minimum, there is an arguable or ambiguous grant of such authority. If the Court were writing on a clean slate, its interpretation of the Act would be strongly influenced by DOJ's persuasive argument that as a matter of policy to avoid conflicting legal positions by the various branches of the Government, particularly in the area of interpreting statutes of wide governmental application such as the FOIA, any limitation of DOJ's authority to control litigation must be narrowly construed and Congress should make such limitation on DOJ's power absolutely clear. However, this is not 1933 and the Court is persuaded that the evidence of the recognition of TVA's independent litigating authority by Congress and the Department of Justice over a period of forty-nine years must lead to the conclusion that the language of the TVA Act does confer such authority.

Initially, the Court is impressed with the argument of the TVA attorneys that one of the reasons that TVA was set up as an independent corporation was to give it a greater degree of independence than was routinely enjoyed by governmental agencies. In 1959, when the TVA Act was amended to authorize the authority to issue revenue bonds, Senator Lister Hill, author of the bill which became the TVA Act of 1933, testified about the purpose and history of the Act:

"[The Tennessee Valley region was] selected for the trial of a new idea in Federal Administration, the idea of a unified approach to resource development. . . .

\* \* \* \* \* \*

"The unified approach . . . was not the only new idea embodied in the legislation. We . . . tried to build a bulwark against the steady tide of centralization. We knew then, as we know now, that too many decisions were made in Washington on the basis of papers and reports, too much was decided by remote control. . . . We told the Board of TVA to make its headquarters in the region. . . . *We made it an independent agency, in corporate form, removed from centralized control in Washington.* We gave authority, Mr. Chairman, commensurate with responsibility. . . . *We authorized the Board to buy or condemn land, to purchase the equipment required, to advance its program objectives, and to sell whatever proved to be surplus. The Board could enter into contracts, to sue and be sued in the courts, and it could be held accountable for all of its acts.*" (emphasis added) Revenue Bond Financing by TVA: Hearings on S. 931 and H.R. 3460 Before a Subcommittee of the House Committee on Public Works, 86th Cong., 1st Sess. 9–11 (1959).

As is clear from his remarks, Senator Hill envisioned the entity he had helped to establish as something different than the ordinary governmental agency in that TVA

possessed a unique degree of independence and responsibility in the carrying out of its purpose.

A few years after TVA was created, a Joint Congressional Committee in 1938 was charged with the statutory purpose "to make a full and complete investigation of the administration of the Tennessee Valley Authority Act of 1933, as amended .... [and] report to the Senate and House .... the results of its investigations, together with its recommendations...." 52 Stat. 154, 156 (1938). The statute specifically required that the Committee look into all court actions seeking an injunction against TVA and review the initial disposition of the suits, the expense to TVA in defending, the disposition on appeal, if any, and the effect on administration and revenue of TVA. The Committee heard testimony and reviewed the handling of the litigation in the two cases testing the constitutionality of the Act, *Ashwander v. Tennessee Valley Authority*[1] and *Tennessee Elec. Power Co. v. Tennessee Valley Authority*[2]. The litigation in those cases was controlled by TVA's General Counsel, James Lawrence Fly, and by a private attorney, John Lord O'Brian, hired by TVA. *Hearings Before the Joint Comm. on the Investigation of the Tennessee Valley Authority*, 75th Cong. 3d Sess. pt. 2 at 953–962.

When its investigation was completed, the Committee reported that the TVA legal department was handling all types of litigation and had been forced to expend $403,-642.00 in the defense of suits attacking TVA's constitutionality in the period ending June 30, 1938. More relevant to this litigation, the Committee in discussing TVA's need to employ private attorneys reported that:

"*In addition the Authority, unlike ordinary Government departments, has no statutory right to demand legal assistance from the Department of Justice.* Former Solicitor General Stanley Reed

participated in the argument of the *Ashwander* case before the Supreme Court, and other Department of Justice attorneys assisted similarly in the *18-Power Companies* case. But the Authority was unable to secure active assistance from the Department in the actual preparation of the two cases or in arguing them before the district court and the circuit court of appeals." (emphasis added) S.Doc.No.56, 76th Cong., 1st Sess. at 62, 68 (1939).

The report indicates that the Committee recognized that responsibility for TVA's litigation resided in TVA.

In 1953 Congress amended the jurisdictional provisions governing the Court of Claims. The amended statute contained a clause exempting suits brought against the TVA from the Court of Claims jurisdiction. 28 U.S.C.A. § 1491 (1973). The legislative history explains that the provision was included because TVA could already be sued in tort or in contract in the United States district courts and

"[i]f future litigation should be brought in the Court of Claims rather than in Federal or State courts in [the] Tennessee Valley, it would necessitate frequent and extended trips to Washington by TVA attorneys and witnesses, which it would deem expensive and burdensome to the Government." S.Rep.No.261, 83d Cong., 1st Sess. 3 (1953)

In the Contract Disputes Act of 1978[3], Congress changed the provisions regarding the resolution of government contract claims and disputes. In the legislative history explaining section 4(b) of the Act, governing claims of fraud or misrepresentation, the Senate Committee noted:

"Section 4(a) does not make the Tennessee Valley Authority subject to the Federal Claims Collection Act of 1966 or derogate from its authority to settle, compromise, pay, or otherwise adjust any

---

1. 8 F.Supp. 893 (N.D.Ala.1934), 9 F.Supp. 800 and 965 (N.D.Ala.1935), *rev'd* 78 F.2d 578 (5th Cir. 1935), *aff'd* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

2. 21 F.Supp. 947 (E.D.Tenn.1938), *aff'd* 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939).

3. Pub.L. 95–563, 92 Stat. 2383.

claim involving fraud. *Similarly, because the Tennessee Valley Authority handles its own litigation, its attorneys, rather than the Attorney General, will enforce its rights under Section 4(b)."* U.S.Code Cong. & Admin.News, p. 5255; S.Rep.No. 95–118, 95th Cong. 2d Sess. 21 (1978), U.S.Code Cong. & Admin.News 1978, p. 5235.

The Act also provides that agency heads may appeal a decision of a Board of Contract Appeals only after obtaining prior approval of the Attorney General. 41 U.S. C.A. § 607(g)(1)(B) (1981 pp.) TVA, however, is not governed by that paragraph and "may appeal the decision to a United States district court ... within one hundred twenty days after the date of the decision in any case." 41 U.S.C.A. § 607(g)(2)(B) (1981 pp.).

Finally, in two recent statutes, the Customs Court Act of 1980 [4] and the Federal Courts Improvement Act of 1982 [5], Congress included a provision which states:

> "Nothing in this act affects the authority of the Tennessee Valley Authority under the Tennessee Valley Authority Act of 1933 to represent itself by attorneys of its choosing." Pub.L.No.96–417, Sec. 705; Pub.L.No.97–164, Sec. 169.

The chairman of the House Committee responsible for the Customs Court Act stated that the above provision clarified the effect of the Act

> "... on the ability of the Tennessee Valley Authority (TVA) to represent itself by attorneys of its choosing. *This maintains the state of the law relating to the TVA as established under the TVA Act of 1933."* (emphasis added) 126 Cong. Rec.H.9343 (daily ed. Sept. 22, 1980)

Although the Court recognizes that the provision included in both acts is only a savings clause and in no way alters or amends the TVA Act, the Court does not think that Congress would twice enact a provision to preserve a right to TVA which never existed. The history of Congressional enact-ments impacting on TVA and Congressional investigations of TVA leads this Court to the conclusion that Congress is aware of and concurs in TVA's interpretation of its governing act as vesting TVA with independent litigation authority.

The Court is also impressed that, prior to this case, the position of the Department of Justice on this issue; expressed in internal memoranda and letters, and before the courts, has been that TVA had independent litigating authority. TVA has provided the Court with numerous letters by various DOJ division heads noting that the U. S. Attorney had been served with a summons and complaint against TVA and assuming that TVA will "in accordance with [TVA's] usual practice, defend this suit with your own counsel. Accordingly, we are not opening a file on this case." Similarly, in an internal memorandum recommending that the Solicitor General participate in the petition for certiorari of the case of *TVA v. Hill* [6], the Deputy Solicitor stated:

> "The only decision for us is whether the Solicitor General should sign the petition that TVA will file in this case. *The U. S. is not a party and TVA has independent litigating authority in the Supreme Court*; traditionally, however, the Solicitor General has signed TVA Supreme Court filings if its position is reasonable and does not conflict with any position of the Executive Branch." (emphasis added) TVA br., Att. F.

The DOJ inexplicably relies on the case of *East Tenn. Research Corp. v. Tennessee Valley Authority*, 416 F.Supp. 988 (D.D.C. 1976) to support its claim that Congress has never divested the Attorney General of authority over TVA litigation involving statutes of government wide impact. In *East Tenn.,* the court was faced with the question of whether the amendment to the FOIA, which provided a forum for all FOIA suits in the District of Columbia, applied to FOIA actions brought against TVA. Judge

4. Pub.L.No.96–417, 94 Stat. 1727.

5. Pub.L.No.97–164.

6. 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1977) *aff'g* 549 F.2d 1064 (CA 6th).

Sirica held that since the amendment adding the District of Columbia as a forum was added at the same time the Act was amended to make TVA subject to it, Congress intended for the forum choice to apply to TVA. In discussing the issue, Judge Sirica noted that:

"The reason for [the amendment] was twofold: (1) to give a plaintiff an opportunity to put his case before a court which has 'substantial expertise' in working with the Act, and (2) 'since attorneys in the Justice Department in Washington, D. C. will have been involved in initial FOIA determinations at the administrative level,' to provide a forum that would be convenient to the defendant government as well. (citation omitted)

"The first of these reasons obviously will not diminish in importance depending on the particular defendant, its focus is on the forum itself. *The second loses all its force, however, when the TVA is the defendant, since the Corporation neither is represented by nor confers with the Justice Department on FOIA matters*; the TVA's own attorneys in Knoxville, Tennessee, do this work." 416 F.Supp. at 989.

Although the court later vacated the order on which this opinion was issued when the case was dismissed on plaintiff's motion, this Court thinks that the statement is indicative of the fact that since TVA was created, Congress, DOJ, and the courts have treated TVA as having independent litigating authority.

All of the above is supportive of the position of TVA that its attorneys have the authority to represent TVA, but the final blow to the Department of Justice's argument that the Attorney General has final control over all TVA litigation is dealt by the fact that TVA and DOJ have frequently been on opposing sides in court cases. *See e.g. Tennessee Valley Authority v. United States*, 96 F.Supp. 409 (N.D.Ala. 1951) (an ICC determination suit); *Tennessee Valley Authority v. EPA*, 523 F.2d 16 (6th Cir. 1975), *cert. denied* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976) (review of EPA interpretation of the Clean Air Act).

In the case of *Alabama ex rel Baxley v. TVA et al*, 467 F.Supp. 791 (N.D.Ala.1979), a citizens' suit brought under the Clean Air Act, the Department of Justice, on behalf of EPA, intervened as a party plaintiff against TVA. The able attorney for DOJ is unable to suggest a satisfactory explanation of how the Attorney General can represent one party to litigation while he has the authority to control the litigation of the opposing party. It does not require resort to a canon of ethics to know that there would be gross impropriety in the same lawyer having control of both sides of a case in litigation. But the newly discovered position of DOJ places the past acts of the Attorney General in this indefensible posture.

In summary, the Court is of the opinion that although the language of the TVA Act conferring independent litigation authority, standing alone, is arguably subject to differing constructions, the history of the establishment of TVA, the actions of Congress, and the actions of the Department of Justice over the forty-nine year history of the Act seem to compel the conclusion that the correct interpretation is that the language of the Act does confer independent authority on TVA. In an affidavit by the Chairman of the Board of TVA, Mr. C. H. Dean, Jr., filed herein April 19, 1982, the TVA Board has expressed its decision that the attorneys of TVA represent the Corporation in this action. For these reasons, the motion to strike of the Attorney General will be denied. An order will be entered this date in accordance with this opinion.