**Kenneth M. COOPER, Petitioner,**

v.

**TENNESSEE VALLEY AUTHORITY,
Respondent.**

**Appeal No. 83–810.**

United States Court of Appeals,
Federal Circuit.

Dec. 14, 1983.

unnecessary to reach other arguments raised by appellants.

Don W. Poole, Chattanooga, Tenn., submitted for petitioner.

James E. Fox, Assoc. Gen. Counsel, Knoxville, Tenn., argued for respondent, Tennessee Valley Authority. With him on the brief were Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr. Asst. Gen. Counsel, and A. Jackson Woodall, Jr., Knoxville, Tenn.

David M. Cohen, Robert E. Richardson, Washington, D.C., argued for Dept. of Justice.

Before FRIEDMAN and SMITH, Circuit Judges, and NICHOLS, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board (Board) upholding the action of the Tennessee Valley Authority (TVA) in terminating the petitioner's employment with that agency as a result of a reduction in force.

The case presents two issues. The petitioner challenges the application of the reduction-in-force procedures to him and urges that he was improperly discharged thereunder. There is also a dispute between TVA and the Department of Justice over whether TVA may represent itself through its own lawyers in this court (as TVA urges), or whether the Department has exclusive authority to represent the agency here.

We affirm the decision of the Board upholding the termination of the petitioner's employment through the reduction in force. We further hold that TVA may represent itself before this court.

## I

A. For many years the petitioner served as the supervisor of the Office Engineering Unit at a major TVA hydroelectric construction project, the Raccoon Mountain Project (Raccoon Mountain). By the summer of 1981, however, construction work at the project was nearly completed. Although at one time the petitioner had supervised seven engineers and engineering clerks at the project, by the summer of 1981 these employees all had transferred to other TVA projects. At that time it was "apparent" that work on the project would not last much longer and that there was no further need for engineers. TVA concluded that a reduction in force at Raccoon Mountain was appropriate.

Under Civil Service regulations governing reductions in force, an agency conducting that procedure, in determining an employee's retention rights, must establish (1) the "competitive area," which is the agency's organizational and geographic subdivision within which employees have retention rights, and (2) the "competitive level" at which the employees have such rights. 5 C.F.R. § 351.402–.403 (1983). TVA established Raccoon Mountain as the petitioner's competitive area and the supervising engineer level at which he was employed as his competitive level. Since the petitioner was the only employee in that competitive area at that competitive level, he had no retention rights. TVA accordingly terminated his employment pursuant to the reduction in force.

On the petitioner's appeal from that action, the presiding official of the Board's regional office upheld the reduction in

force, and the Board denied review of that decision. The presiding official held: that the reduction in force "resulted from a lack of work," which under 5 C.F.R. § 351.201(a) is a proper ground for conducting a reduction in force; that the petitioner's "competitive area was properly established"; that, "as the only incumbent of the only position in his competitive level, [the petitioner] was properly reached for release therefrom"; and that, because petitioner was an excepted service employee, he "had no right of assignment" to another position in the agency.

B. The petitioner does not challenge the Board's determination that the reduction in force was justified and that he had no right of assignment to another position. Instead, he challenges the reduction in force on what he describes as a "highly technical" argument, which has two facets.

■ (1) The petitioner first contends that the reduction-in-force notice was defective because it was initiated and signed by someone from a division other than the division in which he was employed. The notice was signed by the chief of the Construction Services Branch, of which Raccoon Mountain was not a part. As the presiding official pointed out, however, the chief of that branch had been "designated to serve as Acting Project Manager at Raccoon Mountain for the sole purpose of closing out that facility . . . ." In that capacity he had authority to initiate the reduction in force that resulted in the discharge of the petitioner. Contrary to the petitioner's contention, it is immaterial that the designation of the branch chief to perform that function was not made in writing or upon a specific TVA form.

■ (2) The petitioner also argues that he should have been transferred to the Construction Services Branch, and that if this had been done he would have been at a different competitive level and therefore would not have been discharged. Although the petitioner correctly points out that "[a]t some point in time the Raccoon Mountain Project was transferred to the Construction Services Branch," the presiding officer responded that there was no evidence that the

transfer occurred before the reduction in force. The petitioner cites no authority that would have required TVA to transfer the petitioner to the Construction Services Branch, and we know of none. The petitioner has not shown any basis for rejecting the Board's determination that the evidence supports the agency's selection of the petitioner's competitive area and competitive level.

"An agency is accorded wide discretion in conducting a reduction in force; absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision." *Dancy v. United States,* 668 F.2d 1224, 1226 (Ct.Cl.1982); *see also, Friedman v. United States,* 214 Ct.Cl. 804, 805–06 (1977). Under this limited scope of judicial review, we have no basis for overturning TVA's termination of the petitioner's employment pursuant to the reduction in force.

## II

■ A. In his petition to review in this court, the petitioner named TVA as the respondent, as the Civil Service Reform Act of 1978 required. 5 U.S.C. § 7703(a)(2) (1982). In accordance with our customary practice that the Department of Justice represents the agency in appeals from the Board, the court sent to the Department a notice of the docketing of and routine information about the handling of the appeal. In response to that notice, an attorney from the Department entered his appearance for TVA.

Upon receiving notice from the Department of its action, the General Counsel of TVA informed both the Department and the court that the agency wished to be represented in this case by its own attorneys. TVA and the Department then wrote lengthy letters to the court explaining why each held the view that it, and not the other, was solely authorized to represent the agency. In response, the court ordered the Department and TVA to file separate briefs on the question of represen-

tation. The two agencies filed extensive briefs, and we heard oral argument by them on the issue.

B. The government relies on 28 U.S.C. § 518(a) which, as amended by the Federal Courts Improvement Act of 1982 (Courts Improvement Act), Pub.L. No. 97–164, 96 Stat. 25, provides:

Except when the Attorney General in a particular case directs otherwise, the Attorney General and the Solicitor General shall conduct and argue suits and appeals in the Supreme Court and suits in the United States Claims Court or in the United States Court of Appeals for the Federal Circuit and in the Court of International Trade in which the United States is interested.

This provision goes back a long time. It stems from a statute of the First Congress which, upon creating the position of Attorney General, gave him the "duty ... to prosecute and conduct all suits in the Supreme Court in which the United States shall be concerned." Act of Sept. 24, 1789, ch. 20, § 35, 1 Stat. 73, 93 (1789). Following the establishment of the Court of Claims in 1855, Act of Feb. 24, 1855, ch. 122, 10 Stat. 612 (1855), Congress added that court to the Supreme Court as the courts in which the Attorney General would "attend to the prosecution and defence [sic] of all matters and suits ... on behalf of the United States." Act of June 25, 1868, ch. 71, § 5, 15 Stat. 75 (1868).

In the 1870 statute that created the Department of Justice and established the position of Solicitor General, Congress revised the provisions governing the representation of the United States in the courts. With respect to the Court of Claims, the statute authorized the Attorney General to require the Solicitor General "to argue any case in which the government is interested before the court of claims." Act of June 22, 1870, ch. 150, § 5, 16 Stat. 162. The provision underwent further changes, which are immaterial to the case before us. Prior to the enactment of the Courts Improvement Act, the pertinent portion of section 518(a) read as follows:

the Attorney General and the Solicitor General shall conduct and argue suits and appeals in the Supreme Court and suits in the Court of Claims in which the United States is interested.

28 U.S.C. § 518(a) (1976).

In the Courts Improvement Act, Congress abolished the Court of Claims and created in its place this court and the United States Claims Court, which succeeded to the trial jurisdiction of the Court of Claims. Sections 101, 105(a), 133(a), 96 Stat. 25, 26, 39 (to be codified at 28 U.S.C. §§ 41, 171–177, 1491). The Act substituted "United States Claims Court or the United States Court of Appeals for the Federal Circuit" for "Court of Claims" in section 518(a). Section 117, 96 Stat. 32.

At the same time that Congress made this change in section 518(a), it also provided in Section 169 of the Courts Improvement Act:

Nothing in this Act affects the authority of the Tennessee Valley Authority under the Tennessee Valley Authority Act of 1933 to represent itself by attorneys of its choosing.

96 Stat. 51.

The legislative history of section 169 confirms that it means precisely what it says: that the Courts Improvement Act was not intended to change the existing authority of TVA "to represent itself by attorneys of its choosing." The House committee report stated that this provision, then section 307, H.R. 4482, 97th Cong., 1st Sess. (1981), "provides that the proposed legislation will not change the provisions of existing law concerning the legal representation of the TVA before any court of the United States." H.R.Rep. No. 312, 97th Cong., 1st Sess. 30 (1981). Similarly, the Senate committee report explained that the provision, then section 168, S. 1700, 97th Cong., 1st Sess. (1981), "makes clear that nothing in this Act affects the authority of the Tennessee Valley Authority to represent itself by attorneys of its choosing." S.Rep. No. 275, 97th Cong., 1st Sess. 25 (1981), U.S.Code Cong. & Admin.News 1982, pp. 11, 35.

Further support for this conclusion is found in the Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1727. In there establishing the Court of International Trade, Congress amended section 518(a) to add that court to the courts in which the Attorney General and the Solicitor General are to "conduct and argue suits ... in which the United States is interested." Section 503, 94 Stat. 1743. In the same statute, however, Congress included a provision containing language identical to that subsequently used in Section 169 of the Courts Improvement Act. Section 705, 94 Stat. 1748. The floor manager for the bill explained that this section "clarifies the effect of H.R. 7540 upon the right of the Tennessee Valley Authority to represent itself in the Court of International Trade." 126 Cong.Rec. 26552 (1980). Similarly, Representative Rodino, the chairman of the committee, stated that the provision clarified the effect of the Act "on the ability of the Tennessee Valley Authority (TVA) to represent itself by attorneys of its choosing. This maintains the state of the law relating to the TVA as established under the TVA Act of 1933." Id. at 26555.

The language and legislative history of both the Courts Improvement Act and the Customs Court Act of 1980 demonstrate that in both of those statutes Congress intended to preserve the existing authority of TVA to conduct its own litigation. It therefore is necessary to determine what authority TVA had prior to the Courts Improvement Act to represent itself through its own attorneys.

C. It is undisputed that since TVA was established in 1933, Tennessee Valley Authority Act of 1933, ch. 32, 48 Stat. 58, the agency consistently has handled its own litigation through its own attorneys. TVA tells us in its brief, and the Department does not dispute, that in the past 50 years the agency has represented itself in between 6,000 and 7,000 cases. Moreover, as the court stated and described in *Algernon Blair Industrial Contractors, Inc. v. Tennessee Valley Authority,* 540 F.Supp. 551 (M.D. Ala.1982), there is extensive "evidence of the recognition of TVA's independent litigating authority by Congress and the De-

partment of Justice over a period of forty-nine years ...." *Id.* at 553. To cite just one example, the Senate committee report on the Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat. 2383 (codified at 41 U.S.C. §§ 601–613 (Supp. V 1981)), stated with respect to the provision in that Act (then section 4(b), S. 3178, 95th Cong., 2d Sess. (1978)) governing fraud claims against government contractors: "[B]ecause the Tennessee Valley Authority handles its own litigation, its attorneys, rather than the Attorney General, will enforce its rights under section 4(b)." S.Rep. No. 1118, 95th Cong., 2d Sess. 21, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5255.

Indeed, even though the Solicitor General traditionally represents in the Supreme Court agencies that have explicit statutory authority to conduct their own litigation through their own attorneys (*see infra*), he has recognized that TVA may independently represent itself in that Court. *See Algernon Blair,* 540 F.Supp. at 555.

*Algernon Blair* was a suit under the Freedom of Information Act seeking documents from TVA. The agency appeared through its lawyers. The Department of Justice then moved to strike those appearances and to substitute its lawyers as the representatives of the agency. The court, relying heavily upon the evidence of congressional and departmental recognition of TVA's independent litigating authority, flatly held that the agency has that authority and denied the Department's motion to strike the appearance of the TVA attorneys. 540 F.Supp. at 556. The Department noted an appeal, but dismissed the appeal after the Court of Appeals for the Eleventh Circuit denied a stay pending appeal.

In representing itself over the past half century, TVA has acted pursuant to its statutory authority to "sue and be sued in its corporate name," 16 U.S.C. § 831c(b) (1982), and the authority of its board of directors to "appoint such ... attorneys ... as are necessary for the transaction of its business" and "to define their duties." 16 U.S.C. § 831b (1982). The government correctly points out that this statutory au-

thority is far less specific than provisions in some statutes that explicitly authorize an agency to represent itself. *See, e.g.,* National Labor Relations Act, § 4(a), 29 U.S.C. § 154(a) (1976) (providing that attorneys appointed by the National Labor Relations Board "may, at the direction of the Board, appear for and represent the Board in any case in court"). As the court stated in *Algernon Blair,* however,

> although the language of the TVA Act conferring independent litigation authority, standing alone, is arguably subject to differing constructions, the history of the establishment of TVA, the actions of Congress, and the actions of the Department of Justice over the forty-nine year history of the Act seem to compel the conclusion that the correct interpretation is that the language of the Act does confer independent authority on TVA.

540 F.Supp. at 556.

"[E]stablished practice may shed light on the extent of power conveyed by general statutory language .... " *Federal Trade Commission v. Bunte Brothers,* 312 U.S. 349, 352, 61 S.Ct. 580, 582, 85 L.Ed. 881 (1941). The Department of Justice has not convinced us that in consistently handling its own litigation for 50 years, with the apparent acquiescence of the Department of Justice and with congressional recognition and apparent approval of that practice, TVA acted beyond its authority.

D. Under the Civil Service Reform Act of 1978, review of decisions of the Merit Systems Protection Board could be had either in the Court of Claims or in one of the regional courts of appeals. Pub.L. No. 95–454, § 205, 92 Stat. 1143, 1147 (codified at 5 U.S.C. § 7703(b)(1) (Supp. V 1981)). In the Courts Improvement Act this court was given exclusive jurisdiction over those cases. 96 Stat. 37, § 127(a) (codified at 5 U.S.C. § 7703(b)(1) (1982)).

TVA informs us that four suits under the Civil Service Reform Act were filed against it in the courts of appeals challenging Board decisions involving TVA employees, that those suits were "routinely defended by TVA through its own counsel," and that, in at least one of those cases (*Briley, infra* ),

the Department of Justice recognized the authority of the agency to represent itself. *Guess v. TVA,* 703 F.2d 581 (11th Cir.1983) (mem.); *McKinney v. MSPB,* 697 F.2d 1093 (11th Cir.1983) (mem.); *Briley v. Tennessee Valley Authority,* 708 F.2d 722 (6th Cir. 1982); *Stevens v. Tennessee Valley Authority,* 687 F.2d 158 (6th Cir.1982), *reh'g denied,* 699 F.2d 314 (6th Cir.1983). The Department of Justice has not denied that TVA so handled those cases.

The Department has given no convincing reason, and we cannot discern any, why, when in the Courts Improvement Act Congress transferred jurisdiction to review Board decisions exclusively to this court, it intended to change the settled prior practice under which TVA represented itself in those cases. If Congress, in thus transferring jurisdiction, intended to alter the traditional method of representation, presumably it would explicitly and clearly have so indicated. Not only did Congress not so indicate, but on the contrary, it affirmatively provided that nothing in the Courts Improvement Act was to "affect the authority of ... [TVA] to represent itself by attorneys of its own choosing." Section 169. The evidence is compelling that Congress intended TVA to continue to represent itself in Board cases before this court as it had represented itself in those cases before the courts of appeals.

E. Finally, the Department argues that, at least with respect to laws of nationwide general applicability, such as the Civil Service Reform Act, it is important that the federal government speak with a single voice, and that this objective may be accomplished only if the Department exclusively represents all agencies in litigation under such legislation. The need for uniformity of interpretation of such statutes, however, relates to judicial interpretation, not to the identity of the lawyers representing the agency. Since review of Board decisions has been centralized in this court (except for "mixed" cases involving claims of both nondiscriminatory agency adverse action and discrimination, *Williams v. Department of the Army,* 715 F.2d 1485 (Fed.Cir.1983)),

there is no basis for the Department's concern.

The Department has not demonstrated any reason to believe that in Board cases before this court TVA is likely to take positions inconsistent with or contrary to the Department's interpretation of the statute. If TVA ever should do that, the Department could present its views through filing a brief amicus curiae, as Rule 29 of the Federal Rules of Appellate Procedure permits it to do. Indeed, in this very case, TVA filed a comprehensive brief on the merits. The Department filed only a two-page brief, which did not discuss the merits but instead merely "adopt[ed] by reference the brief of the TVA as if it were our own brief . . . ."

## CONCLUSION

The decision of the Merit Systems Protection Board is affirmed.

AFFIRMED.