**Richard A. DEWEESE, Petitioner,**

v.

**TENNESSEE VALLEY AUTHORITY, Respondent.**

No. 93–3549.

United States Court of Appeals, Federal Circuit.

Sept. 8, 1994.

Charles W. Van Beke, Atty., Wagner, Myers & Sanger, P.C., Knoxville, TN, submitted on the briefs for petitioner.

Justin M. Schwamm, Sr., Asst. Gen. Counsel, Harriet A. Cooper, A. Jackson Woodall, TVA—Office of the Gen. Counsel, Knoxville, TN, submitted on the briefs for respondent.

Before ARCHER, Chief Judge, and NEWMAN and MICHEL, Circuit Judges.

ARCHER, Chief Judge.

Richard A. Deweese appeals from the decision of the Merit Systems Protection Board (MSPB or board), Docket No. SL–0351–93–0045–I–1 (Aug. 13, 1993),[1] affirming the action of the Tennessee Valley Authority (TVA or agency) separating him from the service under reduction-in-force (RIF) procedures. 58 M.S.P.R. 608. We reverse and remand.

## I.

Deweese was a Mechanical Engineer, SC–4, with the TVA's Office of Nuclear Power, Knoxville, Tennessee. The TVA decided in the fall of 1989 to "downsize" the Nuclear Engineering unit from about 350 employees to about 120 employees. Under the reorganization, all engineering positions from the Task Project within the Nuclear Engineering unit in Knoxville would be eliminated and most tasks would be relocated to sites in other parts of Tennessee and Alabama. Accordingly, in November of 1989, Deweese and "dozens" of other employees in the unit were told that all their positions were going to be eliminated.

On August 3, 1990, Deweese first received written notice that, effective September 28, he would be separated under reduction-in-force procedures. The notice was accompanied by a retention register listing Deweese and six other employees. *See* 5 C.F.R. § 351.404 (retention registers). Among the six others were two co-workers, Watts and Moore. Watts and Moore had less seniority than Deweese. However, on August 8 and September 29, respectively, Watts and Moore were transferred to Watts Barr Nuclear Plant without any prior announcement that there were vacant positions there.

Deweese's September 28th termination date was postponed and on October 19, 1990, he received final notice that he would be RIF'd effective November 30, 1990. The accompanying retention register listed only him and one co-worker, Thiele. This list was incorrect in that Thiele had already been transferred out. Thus, Deweese was the only one left on the retention register, the only one who was going to be RIF'd.

On November 30, 1990, the TVA separated Deweese from the service, and he appealed the RIF action to the MSPB. In an initial decision, an administrative judge (AJ) of the MSPB affirmed the agency's action. In his decision, the AJ found that the TVA invoked the RIF regulations for a legitimate reason—a *bona fide* reorganization—and properly applied the regulations to Deweese in carrying out the RIF process. The AJ found that although there were initially dozens of employees at the TVA with less retention standing or seniority than Deweese, none appeared on the final retention register because (1) some were in competitive levels different from Deweese's; (2) some had been promoted to competitive levels in management different from Deweese's; (3) some had already been RIF'd or removed for cause; and (4) some had been "selected" for temporary or permanent positions in "another competitive area with or without a vacancy announcement."

Deweese had applied for certain vacant positions in other locations but had not been selected. The AJ found that the MSPB had no jurisdiction to review any decision by the TVA not to select Deweese for the positions he applied to.

Deweese also argued before the AJ that the TVA violated several provisions of the Articles of Agreement, a negotiated agreement between the TVA and the Salary Policy Employee Panel. The agreement sets forth, among other things, RIF procedures. As part of its jurisdiction to review the propriety of RIF actions, the MSPB enforces employee RIF rights derived from a negotiated agreement and treats them in the same manner as agency regulations. *See Randle v. Department of the Navy,* 50 M.S.P.R. 574, 581 (1991).

Paragraph S–10 of the Supplemental Agreement to the Articles of Agreement, titled **"Reduction in Force,"** provides in pertinent part:

---

1. An administrative judge of the MSPB issued an initial decision on March 5, 1993. The initial decision became the final decision of the board on August 13, 1993, when the board denied Deweese's petition for review.

### E. Retention Register

In a RIF a retention register is prepared which lists all employees in the given *competitive area and competitive level* by groups....

....

Within any subgroup in which employees will be terminated, employees are listed in order of their service dates....

....

Employees are terminated in the reverse order from which they are listed on the retention register....

....

### K. Consideration for Placement in Vacant Positions During RIF Notice Period

An employee selected for separation from a job in RIF *is considered for placement in vacant jobs in accordance with Supplemental Agreement S–7.*

Also, at or before the time formal notice of [RIF] is given, the employee is given a form on which to indicate *the types, levels, and locations of work* in which he will accept employment. The information he provides is combined by TVA with a summary statement of his *education and experience* and sent to each organization which has positions of the type for which he may be qualified and in which he has expressed interest.

(Emphasis added.)

Paragraph S–7, incorporated by reference in paragraph S–10.K, is entitled **"Filling Positions"** and provides the general procedure by which the TVA fills positions:

### A. Considering Employees Before Appointing Outside Candidates

In general it is the policy to *promote* or *transfer* present employees rather than to appoint candidates from outside TVA....

### B. Announcing a Position Vacancy to Employee

1. *Posting a Vacancy Announcement*

When a vacant position ... is to be filled, an announcement of the vacancy is posted on bulletin boards and a copy sent to the central office and [union offices]....

....

### C. Transfers Without Vacancy Announcement

1. *General Provisions*

A vacant position may be filled without a vacancy announcement by transfer of an employee *in the same competitive level* as provided below....

a. Any employee in the same competitive level and competitive area as the vacant position may be directed to transfer to the vacant position, as long as such transfer does not involve a change of official station.

b. The vacant position may be filled under the following procedure by voluntary or directed transfer from any official station at which there is a surplus of employees....

(1) First, employees at the surplus location are given an opportunity to request transfer to the vacant position. Among those who request transfer, the one with the earliest current service date has the highest preference.

(2) If no employee at the surplus location requests transfer, an employee at the location may be directed to transfer. In selection among employees at the surplus location for directed transfer, the one with the earliest current service date has the highest retention standing.

(Emphasis added.)

The AJ found that the TVA did not violate subparagraph S–7.C.1.b(1) when it transferred Moore and Watts, two employees having less retention standing or seniority than Deweese, to another duty station without a vacancy announcement. The AJ found that S–7.C.1 did not apply because that paragraph applied only to transfers "in the same competitive level" and Watts and Moore were transferred to a different "competitive area," which for that reason was a different "competitive level."

The AJ found that paragraph S–10.E was not violated because the final retention register listing only Deweese was in fact correct. There were no remaining employees in Dew-

eese's competitive area and level at the time he was RIF'd.

Finally, the AJ found that the TVA violated paragraph S–10.K by not issuing and circulating forms describing the employees subject to RIF, their skills and retention standing, and the types of work they were interested in, but that this was harmless error because the agency's placement efforts were otherwise "sufficient." The AJ reasoned that all the employees were treated equally improperly, the agency did provide some information about the employees, namely their grades and job titles, and that Deweese's applications for certain positions demonstrated "what type, level, and location" of position he was interested in. The AJ thus affirmed the TVA's action separating Deweese through a reduction-in-force.

Deweese appeals.

## II.

A. Our standard of review is established and limited by statute. The decision of the MSPB must be affirmed unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c). Agency action reducing its force for increased efficiency of the service generally involves a certain degree of business judgment. Thus we have said that an agency "is accorded wide discretion in conducting a reduction in force; absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision." *Cooper v. TVA,* 723 F.2d 1560, 1562 (Fed.Cir. 1983) (quoting *Dancy v. United States,* 668 F.2d 1224, 1226, 229 Ct.Cl. 300 (1982)).

In this appeal, the facts are undisputed and Deweese challenges neither the agency's *bona fides* for conducting its RIF, nor the agency's application of the RIF regulations. Deweese's challenge focuses exclusively on whether, to his substantial detriment, the agency violated applicable procedure in separating him—specifically certain procedures set forth in the Articles of Agreement. According to Deweese, the TVA carried out its RIF as an "every man for himself" or "who you know" process by notifying the employees of an impending separation and leaving them on their own to scurry to find other positions. Deweese's position is that the Articles of Agreement were designed and expressly provide rules for the very purpose of avoiding such a chaotic turn of events.

■ B. First, Deweese argues that the TVA violated S–7.C.1.b(1) (incorporated into S–10.K) by transferring Watts and Moore without first giving Deweese an opportunity to request transfer and without giving him highest preference, and that since the TVA did not give the surplus employees an opportunity to request transfer, only directed transfers made in order of seniority were permitted by S–7.C.1.b(2).

The TVA does not dispute that C.1.b would require such action if it applied. The TVA argues, as the AJ found, that S–7.C.1.b does not apply at all to the transfers of Watts and Moore. The TVA reasons that the general provision of S–7.C.1 says that it applies only to transfers between positions "in the same competitive level." The TVA cites 5 C.F.R. § 351.403(a) as defining "competitive level" to mean "all positions in a competitive area" which are in the same grade or occupational level and classification series and which are similar enough in duties, qualifications, requirements, pay schedules, and workings conditions so as to be interchangeable. The TVA states that because Watts Bar Nuclear Plant was "undeniably" a different competitive area from the Knoxville location, it was a different competitive level and that S–7.C.1 is therefore inapplicable.

We cannot agree that S–7.C.1 does not apply. It is undisputed that Watts and Moore were transferred without a vacancy announcement and without Deweese having been given an opportunity to request such a transfer. In order to transfer employees without a vacancy announcement, by the plain wording of the Articles of Agreement, the agency has to follow S–7.C. If that paragraph was deemed inapplicable, as the AJ found, and in fact was not applied to Watts's and Moore's transfers, then *a fortio-*

*ri* the agency failed to follow applicable procedure.[2]

In any event, we conclude that the paragraph does apply to the transfers. According to the first of the retention registers produced by the agency, Watts and Moore were in Deweese's competitive level and area prior to their transfers. The agency does not contend that the nature of Watts's and Moore's employment duties changed when they were transferred in such a way as to place them in a different competitive level. The argument simply is that their geographic location changed.

Paragraph S–7.C clearly prohibits management from arbitrarily transferring a surplus employee out of a competitive level and area, which would remove him from RIF requirements and prefer that employee to an employee with higher seniority and retention standing. First, subparagraph C.1.a permits directed transfers *within* a competitive level and competitive area, so long as there is not a change of official station (*i.e.*, an area subject to RIF). These transfers would not upset relative retention standing and may be made freely. Second, subparagraph C.1.b permits a transfer from "any official station at which there is a surplus of employees." In this way, subparagraph C.1.b more broadly allows transfers across competitive areas, which can remove employees from RIF consideration and requirements, as was the case with Watts and Moore. Because of its breadth, subparagraph C.1.b is more careful: C.1.b(1) specifies that *voluntary* transfers may be made only after all surplus employees are given a chance to request transfer, and then the most senior employees are given highest preference; and C.1.b(2) specifies that *directed* transfers may be made if no one requests a voluntary transfer, and then the directed transfers may only be made according to seniority. Agencies are given authority to define competitive levels and areas for purposes of RIF. 5 C.F.R. §§ 351.402, .403; *see, e.g.*, *Ginnodo v. OPM*, 753 F.2d 1061 (Fed.Cir.1985). Through subparagraph C.1.b, the agency has given the

term "competitive level" as it appears in paragraph C.1 a meaning and definition that includes the same competitive level in a different competitive area. Thus, the transfer whether voluntary or directed of surplus employees to a vacancy in the same competitive level in a different competitive area is covered by S–7.C.1.b.

The TVA's failure to follow the requirements of the Articles of Agreement was "a substantial departure from applicable procedures," *Cooper*, 723 F.2d at 1562, and constitutes legal error.

■ C. Next, Deweese argues that the TVA's failure to circulate relevant information about his education and experience, which undisputedly violated paragraph S–10.K, caused Deweese "potential and actual harm," and that the AJ's conclusion otherwise is not supported by substantial evidence.

We agree. Paragraph S–7.A expressly states that it is TVA policy to fill vacant positions within the organization before resorting to outside candidates. General circulation of information regarding Deweese's education and experience and the type, level, and locations of work he was interested in as specifically required by S–10.K would go far to help him find work or to help work find him within the TVA. Merely circulating formal job titles and pay grades cannot compare to providing the information of substance required by S–10.K. Moreover, the failure to provide information about employees' education and experience is likely to be far more harmful to an employee like Deweese who has seniority over many others than it is to a relatively new employee. There is no support in the record for the AJ's reasoning that widespread agency error necessarily causes employees equal harm and, therefore, is harmless to any individual employee's job search. Finally, we fail to understand the AJ's finding that the agency's error was harmless to the extent that Deweese's applications for employment demonstrated the types of work he was interested in. To whom did his applications make this demon-

---

2. The TVA has not cited any other provisions of the Articles of Agreement that would make subparagraph S–7.C inapplicable to Watts's and Moore's transfers, or any provisions that would apply if that subparagraph did not.

stration? Although, of course, the applications demonstrated Deweese's interest to the people receiving them, they did not demonstrate his interest agency-wide, as paragraph S–10.K demands.

## CONCLUSION

We have considered the other arguments of Deweese and the TVA and find that they are without merit. For the foregoing reasons, the decision of the MSPB affirming the separation action of the TVA is not supported by substantial evidence and is erroneous as a matter of law. The decision is therefore reversed and the case is remanded to the MSPB which is instructed to fashion appropriate relief in favor of Deweese.

*REVERSED* and *REMANDED.*