107 F.3d 30
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Mark KELLEY, Petitioner,
v.
DEPARTMENT OF DEFENSE, Respondent.
 No. 97-3052.
 United States Court of Appeals, Federal Circuit.
 Feb. 17, 1997.
 
 Before MAYER, SCHALL, and BRYSON, Circuit Judges.
 DECISION
 PER CURIAM.
 
 
 1
 Mark Kelley petitions for review of the October 9, 1996 final decision of the Merit Systems Protection Board (Board) in Kelley v. Department of Defense, 71 M.S.P.R. 568 (1996) (table). In the initial decision of May 30, 1996, the administrative judge (AJ) sustained the decision of the Defense Contract Audit Agency, Department of Defense (DCAA or agency) to change Mr. Kelley's position to a lower grade pursuant to reduction-in-force (RIF) procedures. Pursuant to 5 C.F.R. § 1201.113(b), the Board made the initial decision final based on its finding that the petition did not meet the criteria for review under 5 C.F.R. § 1201.115. We affirm.
 
 DISCUSSION
 I.
 
 2
 DCAA has five regional offices in the United States, each of which is headed by a director. The regional offices are subdivided into a number of Field Audit Offices (FAOs). Each FAO has a staff of between fifteen and fifty employees and is headed by a Supervisory Auditor, GM-14. Mr. Kelley is employed by DCAA in its Western Region, which covers eight western states (including Alaska and Hawaii) and has twenty-six FAOs. Prior to the RIF, Mr. Kelley held the position of Supervisory Auditor, GM-13. He worked in Santa Barbara, California, at a DCAA branch office. The Santa Barbara Branch Office and five suboffices comprised an FAO.
 
 
 3
 Beginning in the spring of 1994, the Western Region of the DCAA developed plans to consolidate certain FAOs. These plans were based on a projected reduction in audit workload at certain offices and a DCAA goal of reducing 515 management and supervisory positions by 1999. In a July 18, 1994 memorandum, Robert W. Matter, Regional Director for DCAA's Western Region, explained that consolidating the Santa Barbara Branch Office was in line with DCAA's goal to eliminate fifty FAOs by 1999 and to improve the economy and efficiency of operations. Mr. Matter further explained that a branch office in Oxnard, California, had been selected as the surviving FAO because it was more centrally located in relation to the combined FAOs' workload and provided more flexible consolidation options for the future. To mitigate the impact of the reorganizations, DCAA created a new competitive position, Technical Specialist, GS-13, which would reduce the number of personnel who would have to be downgraded from GM-13 to GS-12.
 
 
 4
 The planned reduction triggered application of RIF procedures under 5 C.F.R. §§ 351.201-.902. In a RIF, employees compete for retention of their positions within competitive areas. See 5 C.F.R. § 351.402(a). Competitive areas are described in the regulations as follows:
 
 
 5
 A competitive area may consist of all or part of an agency. The minimum competitive area in the departmental service is a bureau, major command, directorate or other equivalent major subdivision of an agency within the local commuting area. In the field, the minimum competitive area is an activity under separate administration within the local commuting area. A competitive area must be defined solely in terms of an agency's organizational unit(s) and geographical location, and it must include all employees within the competitive area so defined.
 
 
 6
 5 C.F.R. § 351.402(b). Thus, a competitive area is the "geographical area and bureaucratic unit within which the incumbent of an eliminated position will be permitted to vie for retention." Grier v. Department of Health & Human Services, 750 F.2d 944, 946 (Fed.Cir.1984) (citing 5 C.F.R. § 351.402).
 
 
 7
 A "local commuting area" is defined as "the geographic area that usually constitutes one area for employment purposes. It includes any population center (or two or more neighboring ones) and the surrounding localities in which people live and can reasonably be expected to travel back and forth daily to their usual employment." 5 C.F.R. § 351.203. The Office of Personnel Management (OPM), which prescribes RIF regulations, see 5 U.S.C. § 5302, has explained in its regulatory guidelines that individual agencies are responsible for defining local commuting areas. See Federal Personnel Manual, Supplement 351-1, subchapter S3-2d. OPM also has explained that there are no prescribed mileage standards for determining when, for example, two duty stations should be included in a single commuting area, and that a competitive area need not be larger than the local commuting area. Id.; Grier, 750 F.2d at 946. DCAA's regulations state that "[t]he competitive areas established must not be larger than the local commuting area...." DCAA regulation 52-12 (1993).
 
 
 8
 In this case, pursuant to an earlier consolidation in October of 1991, DCAA established competitive areas based on local estimated mileage between FAOs, employee commute distances and times, and permanent change of station (PCS) costs. Consideration of these factors led to the establishment of eight competitive areas in the Southern California area (from Santa Barbara to San Diego). Santa Barbara, where Mr. Kelley worked, was established as a separate competitive area. In making this determination, DCAA took a number of considerations into account, including the fact that (i) in October of 1991, the Santa Barbara commuting area was composed of one FAO (the Santa Barbara Branch Office and five suboffices) authorized to have forty-three auditors and four support personnel; (ii) the next closest office was the Oxnard Branch Office, approximately fifty miles away; and (iii) the Santa Barbara Branch Office was under a single administrative authority, the Western Regional Office. DCAA also took into account the fact that all employees of the Western Region working in the Santa Barbara Branch Office competitive/commuting area were assigned to the FAO comprised of the Santa Barbara Branch Office and its suboffices.
 
 
 9
 By letter dated September 12, 1984, the agency notified Mr. Kelley that based on its consolidation of organizations, reduced supervisory auditor allocation, and other management actions, it was reducing management, supervisory auditor, and administrative positions under RIF procedures. The letter informed Mr. Kelley that his position of Supervisory Auditor, GM-13, was being abolished. Thereafter, on October 1, 1984, Mr. Kelley's duty station at Santa Barbara was deactivated as a separate branch office and became a sub-office of the Oxnard Branch Office. Instead of being separated from service, Mr. Kelley was offered the position of Auditor, GS-12, and he was installed in that position effective November 20, 1994.
 
 II.
 
 10
 In due course, Mr. Kelley filed an appeal with the Board, challenging the RIF procedures followed by the agency. In his appeal, he contended, inter alia, that (i) the competitive area designated by DCAA (Santa Barbara) was improperly drawn because it was smaller than the minimum permitted and (ii) DCAA had acted improperly when it created and placed the Technical Specialist position in a separate competitive level, thereby depriving him of his right to bump into that position. During proceedings before the Board, Mr. Kelley sought discovery as to DCAA's establishment of all its competitive areas nationwide. The AJ refused to compel this discovery on the ground that these requests were overbroad and not aimed at producing evidence material to the issue of whether the Santa Barbara FAO was properly designated as a separate competitive area. In addition, Mr. Kelley sought discovery relating to the creation of the Technical Specialist position; the AJ denied this request on the ground that it was "immaterial."
 
 
 11
 On the merits, the AJ determined that the Santa Barbara FAO constituted a properly drawn competitive area, in that it was an activity under separate administration within the local commuting area, thereby satisfying 5 C.F.R. § 351.402(b). In addition, the AJ sustained the commuting area drawn by DCAA as a result of its statistical analysis of average commuting times and distances for its employees. Finally, the AJ found that Mr. Kelley's bumping rights were not derogated by establishing the Technical Specialist position.
 
 III.
 
 12
 This court must affirm the Board's decision unless Mr. Kelley establishes that it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); Cheeseman v. Office of Personnel Management, 791 F.2d 138, 140 (Fed.Cir.), cert. denied, 479 U.S. 1037 (1986). On appeal, Mr. Kelley urges that the Board erred in denying his motions to compel discovery and in sustaining DCAA's establishment of the Santa Barbara competitive area. We do not find merit in either of these contentions.
 
 
 13
 First, Mr. Kelley has not shown that the Board erred in denying his discovery requests. As stated by this court in Curtin v. Office of Personnel Management, 846 F.2d 1373 (Fed.Cir.1988), "[p]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials. This court will not overturn the board on such matters unless an abuse of discretion is clear and is harmful." Id. at 1378-79 (citations omitted); see also, McEnery v. Merit Systems Protection Board, 963 F.2d 1512, 1514 (Fed.Cir.1992). In this case, the Board acted within its discretion in denying Mr. Kelley's motion to compel discovery on DCAA's establishment of competitive areas nationwide, because the issue relevant to Mr. Kelley's appeal was limited to the establishment of the Santa Barbara competitive area. Thus, the Board's denial of Mr. Kelley's request to compel discovery on this point was not an abuse of discretion.
 
 
 14
 Turning to the main issue on appeal--whether establishment of the Santa Barbara competitive area was in violation of RIF regulations we have stated that "an agency 'is accorded wide discretion in conducting a reduction in force; absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision.' " Deweese v. TVA, 35 F.3d 538, 541 (Fed.Cir.1994) (quoting Cooper v. TVA, 723 F.2d 1560, 1562 (Fed.Cir.1983)).
 
 
 15
 Mr. Kelley contends that the Santa Barbara competitive area was smaller than permitted by regulation, because the agency established a competitive area that was "smaller than the local commute" and because the agency allowed "two or more competitive areas [ (Santa Barbara and Oxnard) ] to be wholly within the local commute." Mr. Kelley further argues that the Board failed to follow Lee v. Department of the Interior, 6 M.S.P.R 669 (1981). We disagree.
 
 
 16
 A local commuting area is a "geographic area that usually constitutes one area for employment purposes," see section 351.203, and the competitive area need not be any larger than the local commuting area. DCAA performed a statistical analysis of its employees' commute times and distances and PCS costs in determining that Santa Barbara should be considered a separate competitive area within the Southern California area. Mr. Kelley does not challenge these findings. In addition, we agree with the AJ's observation that just because a few employees may travel great distances and endure substantial commute times, the agency is not obligated to reflect these extremes in establishing competitive areas.
 
 
 17
 Finally, Mr. Kelley's reliance on Lee is misplaced. In Lee, the Board determined that the agency had failed to submit documents with respect to the establishment of a competitive area; it therefore held that the agency had failed to produce evidence sufficient to carry its burden of proof on the proper definition of the competitive area. Lee, 6 M.S.P.R. at 671. By contrast, in this case DCAA provided ample proof of its reasons for establishing the Santa Barbara competitive area. The Board's decision upholding DCAA's actions is affirmed.
 
 
 18
 No Costs.