**John L. LITZENBERGER, Jr., Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 00–3081.**

United States Court of Appeals, Federal Circuit.

Decided Nov. 7, 2000

William S. Colwell, of Springfield, Virginia, argued for petitioner.

Elizabeth G. Candler, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director.

Before NEWMAN, Circuit Judge, SMITH, Senior Circuit Judge, and SCHALL, Circuit Judge.

---

1. It is not disputed that Mr. Litzenberger's employment by the Authority is governed by Virginia law, but that his retirement rights

Opinion for the court filed by Circuit Judge NEWMAN. Dissenting opinion filed by Circuit Judge SCHALL.

PAULINE NEWMAN, Circuit Judge.

John L. Litzenberger, Jr. petitions for review of the decision of the Merit Systems Protection Board, Docket No. DC0831990279–I–1, affirming OPM's decision that he is not eligible for a discontinued service annuity following his separation from employment by the Metropolitan Washington Airports Authority. We reverse the decision of the Board and remand for appropriate further proceedings.

## BACKGROUND

Mr. Litzenberger was employed by the Federal Aviation Administration and then the Metropolitan Washington Airports Authority from April 6, 1980 through May 31, 1998, and had a total of over twenty-five years of federal service. At the time of his termination he held the position of Operations Officer at Reagan National Airport.

The general sequence of events is undisputed. In about 1995 Mr. Litzenberger's relationship with the Airports Authority began to deteriorate, as he accused Authority officials of misconduct of various sorts, and the Authority accused Mr. Litzenberger of sexual harassment and mismanagement. In 1997 Mr. Litzenberger filed suit in Virginia state court,[1] seeking to compel the Authority to comply with an agreement reached to resolve their differences. In a jury trial, Mr. Litzenberger was denied the requested relief.

The Authority then terminated Mr. Litzenberger's employment, stating the reasons that he "caused the Airports Authority to lose all confidence and trust in you" and that he "violated the Conduct and Discipline Directive." In support of the first reason, the notice of termination listed twelve examples of conduct that caused the loss of confidence and trust, almost all

under the federal civil service system are a matter of federal law.

of which were statements about Authority managers, employees, and contractors, made by Mr. Litzenberger during his testimony at the trial in the Virginia court. For the second reason, he was charged with "mak[ing] irresponsible, false, or defamatory statements which attack, without foundation, the integrity of other individuals or of an organization," in violation of the Conduct and Discipline Directive. The same examples of trial testimony were given as violations of this Directive. Mr. Litzenberger filed a grievance, but the removal action was sustained.

Following his removal Mr. Litzenberger applied for a discontinued service annuity, which is available to certain Civil Service Retirement System employees who are involuntarily separated, but who lack the age or length of service to qualify for an immediate retirement annuity. 5 U.S.C. § 8336(d) provides that:

> [An employee who] is separated from the service involuntarily, except by removal for cause on charges of misconduct or delinquency ... after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to an annuity.

The Office of Personnel Management did not dispute that Mr. Litzenberger had over twenty-five years of qualifying service when he was separated, and did not dispute that his separation was involuntary.[2]

As procedure requires, Mr. Litzenberger filed his request for an annuity with the Metropolitan Washington Airports Authority, which then forwarded it, along with the necessary records, to OPM. In its cover letter the Authority stated:

> It is our understanding that the Office of Personnel Management (OPM) is charged with making the determination as to whether an applicant is eligible for an immediate annuity. By this correspondence, and submitting this form, the Authority takes no position on Mr. Litzenberger's eligibility for an annuity.

We are providing factual information for you to make your own determination. OPM then sent a form RI 38–49 ("Correction Needed to Individual Retirement Record") to the Authority, stating "The 2806 submitted does not give the reason for removal. If the removal was due to cause, please so state." The Authority's response, if any, to this inquiry is not in the record. OPM denied Mr. Litzenberger's application, stating that he had been separated from his position "for cause on charges of misconduct or delinquency."

Mr. Litzenberger appealed to the MSPB. In affirming OPM's decision, the Board refused to consider whether Mr. Litzenberger's separation was indeed "for cause on charges of misconduct or delinquency." Instead, the Board noted that OPM had concluded, from the specifications listed by the Authority in its reasons for removal, that Mr. Litzenberger's separation was for such cause, and held that the Board had no authority to review the substantive validity of these reasons. OPM stated that it had not reviewed the substantive validity of these reasons, but based its determination only on the Authority's charges of loss of confidence and trust, and violation of the Conduct Directive. Thus neither OPM nor the Board reviewed whether "misconduct or delinquency" was established by the statements Mr. Litzenberger made, or considered the litigation context in which he made them.

### DISCUSSION

Mr. Litzenberger does not challenge the Authority's right under Virginia law to terminate him from this at-will employment because it had lost confidence in him. This appeal involves the grounds of removal only insofar as they relate to his entitlement to the annuity.

Mr. Litzenberger argues that it was not "misconduct or delinquency" for him to have conducted good faith litigation in Vir-

---

**2.** Because the issue was not raised before the Board, see *Initial Decision* at 5, we do not consider OPM's new argument that Mr. Litzenberger's separation was not involuntary under *Allen v. OPM*, 77 M.S.P.R. 212 (1998).

ginia state court, whether or not this action caused the Authority to lose confidence in his loyalty as an employee. Thus he argues that even if the Authority were entitled to terminate his employment on the stated grounds, it could not deprive him of the annuity provided by § 8336(d).

Mr. Litzenberger points to the immunity established by the Supreme Court of Virginia for statements made during judicial proceedings. *Eg., Donohoe Construction Co., Inc. v. Mount Vernon Associates,* 235 Va. 531, 369 S.E.2d 857 (1988):

It is well settled that "words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged." The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation. "[T]he public interest is best served when individuals who participate in law suits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy." [Citations omitted.]

Thus Mr. Litzenberger argues that his statements at the Virginia trial, even if they reflected adversely on his employment or employer, were privileged and cannot be used to establish misconduct or delinquency as an employee. The Board refused to consider this argument, stating that the merits of the underlying separation were not appealable to the Board. OPM had also not considered this argument, basing its denial of the annuity solely on the Authority's specifications.

The Board erroneously confused the Authority's right to terminate Mr. Litzenberger's employment, a matter not appealable to the Board, with OPM's determination that the termination was "for cause on charges of misconduct or delinquency," a ruling within the Board's authority and responsibility. Mr. Litzenberger does not seek review of the Authority's action of removal. He seeks review only of OPM's decision that he is not eligible for a discontinued service annuity.

In its letter to Mr. Litzenberger of August 4, 1998, OPM denied the annuity because "the record reflects" that his separation was "for cause on specific charges of misconduct." OPM stated: "Unless the removal is reversed, we must base our decision on the removal as described in the notice of decision." Upon request for reconsideration OPM elaborated upon its reasoning, stating,

The evidence in the file includes the proposed removal letter that states the action proposed was for conduct. In addition, the file contains a letter from the agency relating conduct as the cause for removal, not performance, as all performance ratings were fully successful or better. There is no evidence that you were ever presented a performance improvement plan that would indicate your removal was not performance based action. Your former agency charges refer to your willful behavior, not your inability to perform. The fact that your former agency would not decide the issue of annuity is immaterial. Therefore, we have determined that you were removed for conduct based on the weight of evidence in the file.

While your allegations that statements which came out of litigation should not be considered may go to the propriety of your former agency's action, it does not pertain to the fact that the removal was for conduct. Any challenge to your removal is a separate matter, and OPM has no authority to make a collateral review of your removal in connection with your retirement application.

Thus OPM ruled that "the removal was for conduct," not performance, and that "OPM has no authority" to review the conduct. Although OPM was correct that it could not make a collateral review of whether the removal was justified, OPM was incorrect in holding that any "conduct" leading to removal must necessarily satisfy the "misconduct or delinquency" requirement of § 8336(d). Further, the Authority did not remove Mr. Litzenberger on grounds

stated to constitute misconduct or delinquency, but for loss of confidence based on critical statements made under "absolute privilege," in the words of the Virginia court. OPM could not decide that the removal was for misconduct, a ground not mentioned by the Authority, without confronting the issue of the privileged testimony. OPM did not do so; and the Board erred in not reviewing this issue.

The Board held that it could not review whether the underlying termination was based on misconduct or delinquency, citing *Allen v. OPM*, 77 M.S.P.R. 212, 220 (1998), for the statement "[a]s we have previously stated, however, the determination of an involuntary separation for retirement purposes under 5 U.S.C. ch. 83 is totally separate and distinct from a determination of involuntary retirement for Board jurisdictional purposes under 5 U.S.C. ch. 75."

The *Allen* case concerned a group of Postal Service workers who accepted an "early out" offer of early retirement and later sought discontinued service annuities, arguing that their retirements were involuntary. To overcome the fact that they had accepted the early retirement offers, the workers sought to prove that their acceptances were the product of duress, coercion, or misrepresentation. In *Allen* the Board held that an involuntary retirement had a different meaning in the context of a discontinued service annuity than it had in a wrongful discharge accusation, that the meaning in the former context was determined by OPM regulation as set forth in the Federal Personnel Manual, and that accepting an "early out" offer was not an involuntary separation for purposes of a discontinued service annuity. In *Allen* the Board did evaluate the merits of whether the separations were involuntary under the correct standards, explaining that the appellants were trying to prove involuntariness under the wrong standard, not that they were precluded from alleging involuntariness because the issue was "collateral."

If anything, *Allen* supports Mr. Litzenberger's assertion that the Board was required to determine whether his annuity was properly denied. *Allen* does not support the Board's holding that it could not review the facts of Mr. Litzenberger's termination insofar as they relate to entitlement to an annuity under Chapter 83, and thus that the Board could not review OPM's denial of the annuity. That is not the holding of *Allen*. OPM cites no other authority for its or the Board's decision.

Mr. Litzenberger does not want his job back; he wants the annuity he earned after over twenty-five years of service. OPM could not deny an annuity for misconduct or delinquency without establishing or verifying the misconduct or delinquency, including verifying whether the assertedly culpable statements were privileged under Virginia law. Although Mr. Litzenberger does not dispute that the charge of loss of confidence or trust might suffice to warrant removal from at-will employment, if Mr. Litzenberger's statements in connection with the Virginia litigation were the only asserted misconduct, the Board was required to determine whether such statements can support denial of an annuity under § 8336(d).

The Board's decision is reversed. We remand for appropriate further proceedings.

*REVERSED AND REMANDED*

SCHALL, Circuit Judge, dissenting.

The Metropolitan Washington Airports Authority (the "Authority") removed Mr. Litzenberger from his position for two reasons. The first reason was that he had caused the Authority to lose all confidence and trust in him because he had "displayed great antipathy towards the Authority and its management." Specifically, the Authority charged that Mr. Litzenberger had "recklessly and without regard for the truth thereof accused Authority employees, attorneys, and contractors of improper and/or illegal and/or unethical conduct." The Authority supported this charge with twelve separate specifications. The second reason for the removal was that Mr. Lit-

zenberger had violated the Authority's Conduct and Discipline Directive (the "Directive"). The Authority specified that Mr. Litzenberger had violated the provision of the Directive which states, in part, that "[e]mployees are not permitted to make irresponsible, false, or defamatory statements which attack, without foundation, the integrity of other individuals or of an organization." In support of the second reason for Mr. Litzenberger's removal, the Authority relied upon the twelve specifications that it cited in support of the first reason. Each of the twelve specifications was based upon statements that Mr. Litzenberger made in a lawsuit that he filed against the Authority in state court in Virginia to require the Authority to remove allegedly false allegations of discrimination from his employment record. The suit ended in a jury verdict in favor of the Authority.

Mr. Litzenberger's employment with the Authority was governed by Virginia law, while his retirement rights under the federal civil service system are governed by federal law. Mr. Litzenberger was removed from his position after he had exhausted all Authority grievance procedures that were available to him. Following his removal, he applied to the Office of Personnel Management ("OPM") for a discontinued service annuity pursuant to 5 U.S.C. § 8336(d)(1). That statute provides that "[a]n employee who is separated from the service involuntarily, except by removal for cause on charges of misconduct or delinquency ... after completing 25 years of service ... is entitled to an annuity." OPM denied Mr. Litzenberger's application because it determined that, although he had 25 years of service and had been separated involuntarily, he had been removed for misconduct. In its reconsideration decision OPM informed Mr. Litzenberger:

> While your allegations that statements which came out of litigation should not be considered may go to the propriety of your former agency's action, it does not pertain to the fact the removal was for conduct. Any challenge of your removal is a separate matter, and OPM has no authority to make a collateral review of your removal in connection with your retirement application. If the removal as described is reversed, the matter may again be reviewed. But, OPM is required to make a determination based on the evidence of record.

Mr. Litzenberger appealed the denial of his application to the Board. Following a hearing, at which Mr. Litzenberger testified, the administrative judge ("AJ") to whom the appeal was assigned affirmed OPM's decision. The AJ's decision became the final decision of the Board when the Board denied Mr. Litzenberger's petition for review. The AJ held that Mr. Litzenberger had failed to establish his entitlement to a discontinued service annuity under 5 U.S.C. § 8336(d)(1) by demonstrating that his separation from the Authority was not, as OPM had determined, "for cause on charges of misconduct." The AJ concluded that, "on their face," the Authority's charges against Mr. Litzenberger and the supporting specifications constituted charges of misconduct. In so concluding, she noted, in particular, the fact that Mr. Litzenberger had been charged with making various accusations against Authority employees, attorneys, and contractors "recklessly and without regard for the truth thereof." The AJ determined that this charge came within the scope of the provision of the Directive that prohibits an Authority employee from making "irresponsible, false, and defamatory statements which attack, without foundation, the integrity of other individuals or of an organization." Finally, the AJ ruled that OPM had correctly determined that it had no authority to review the merits of the Authority's removal action against Mr. Litzenberger.

I would affirm the decision of the Board sustaining OPM's denial of Mr. Litzenberger's application for a discontinued service annuity. In my view, this is a very straightforward case. Section 8336(d)(1) provides that an individual who has 25

years of service and who is separated by his or her agency involuntarily is entitled to a discontinued service annuity unless the individual is removed "on charges of misconduct or delinquency." The language of the statute makes it clear that, as far as the nature of Mr. Litzenberger's involuntary separation was concerned, OPM had to do one thing and one thing only: determine whether the separation was based upon a charge of misconduct or delinquency. As both OPM and the Board recognized, OPM was not empowered to delve into the *merits* of Mr. Litzenberger's separation. Rather, OPM's sole task was to determine the *nature* of the separation. The statute uses the words "except by removal for cause on charges of misconduct or delinquency." It does not use the words "except when it is determined that the applicant was properly removed for cause on charges of misconduct or delinquency." Plainly, Mr. Litzenberger was involuntarily separated because he was removed for misconduct. One of the reasons why Mr. Litzenberger was removed was violation of the provision of the Directive that prohibits an employee from making irresponsible, false, or defamatory statements. Violation of that Directive provision obviously amounts to misconduct, a point which both OPM and the Board correctly recognized In my view, that should be the end of the case.

The majority states that OPM was correct when it concluded that "it could not make a collateral review whether the removal was justified." However, the majority then goes on to state that OPM erred by deciding that the removal was for misconduct without addressing Mr. Litzenberger's claim that the statements that gave rise to his removal were privileged because they were made in the state court litigation. Thus, the majority holds that "OPM could not deny an annuity for misconduct or delinquency without establishing or verifying the misconduct or delinquency, including verifying whether the assertedly culpable statements were privileged under Virginia law." According to the majority, "the Board was required to determine whether such statements can support denial of an annuity under § 8336(d)." It remands the case to the Board for that purpose.

I do not believe that it was necessary for OPM to verify Mr. Litzenberger's misconduct and determine whether the statements he made in the state court litigation were privileged. Indeed, I believe that it would have been improper for OPM to have done so. In my view, the majority is requiring OPM to do something that is contrary to the statute. Section 8336(d)(1) simply required OPM to determine whether, when the Authority removed Mr. Litzenberger, it did so because it (the Authority) believed that he was guilty of misconduct. As set forth above, OPM correctly determined that the Authority removed Mr. Litzenberger for misconduct, and the Board properly affirmed that determination. I believe that the majority errs in requiring OPM and the Board to go beyond that determination.

For the foregoing reasons, I respectfully dissent.