Alan S. YURIDITSKY, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 01–3229.

United States Court of Appeals, Federal Circuit.

Oct. 9, 2001.

Before MICHEL, RADER and LINN, Circuit Judges.

MICHEL, Circuit Judge.

Alan S. Yuriditsky seeks review of a final decision from the Merit Systems Protection Board ("Board") affirming the Office of Personnel Management's ("OPM") decision that found Yuriditsky ineligible to receive a discontinued service annuity because his removal was for "misconduct" as well as lack of a security clearance. *Yuriditsky v. Office of Pers. Mgmt.*, No. DC–0831–01–0063–I–1 (Feb. 23, 2001). Because substantial evidence ultimately supports this decision and because we reject the argument that the Board committed an error of law in reaching its conclusion, we *affirm.*

## Background

Yuriditsky served at the Defense Intelligence Agency ("DIA"), most recently in the position of "Supervisory Intelligence Officer (Military Capabilities)." Although this appeal only concerns Yuriditsky's eligibility for a discontinued service annuity, the DIA, the Office of Personnel Management and later the Board itself found him ineligible because of removal for "misconduct," one of the grounds that renders an employee statutorily ineligible to receive the benefit at issue. Consequently, we must explore the reasons underlying Yuriditsky's removal.

In January 1999, the DIA notified Yuriditsky about its intent to revoke his security clearance. As a condition of their employment, all DIA employees must have a security clearance. In a "statement of reasons" for this intended action, DIA identified the following as information that put Yuriditsky's security clearance at issue: a 1998 arrest for malicious wounding and subsequent conviction and prison sentence for assault and battery; a May 1995 charge and sentence for solicitation, which were eventually dismissed after Yuriditsky had performed 100 hours of community service; an October 1991 charge for "curse and abuse," which was later nolle prossed; an October 1996 "verbal altercation" in which Yuriditsky had allegedly threatened "violence" against another DIA employee and had thereby caused "that employee to fear for her safety"; and a Fall 1998 incident in which Yuriditsky "anonymously transmitted pornographic material to a subordinate co-worker on at least one occasion via the Internet to her personal electronic mail account."

In June 1999, Yuriditsky appeared before DIA officials to address the proposed grounds for revoking his clearance and, in August 1999, a DIA official notified him that DIA was indeed revoking it. In its decision, DIA indicated that Yuriditsky's actions evidenced an absence of the "judgment, trustworthiness and personal conduct" needed to function in the workplace and to hold a position "responsible for protecting National security." Specifically, the DIA notice stated that Yuriditsky's "repeated involvement in incidents ... reveal [sic] a pattern of aggressive actions which collectively causes [sic] continual questions about your reliability and stability. You have revealed yourself to be combative, argumentative, and have repeatedly exhibited an explosive temper followed by scurrilous behavior." After reconsidering its decision (at Yuriditsky's request), the DIA thereafter notified him that because he no longer held the requisite security clearance, it also intended to remove him from his position.

DIA representatives met with Yuriditsky again to address the intended action and, in February 2000, DIA decided to remove him from his position. At the time of this action, Yuriditsky had worked at the DIA for more than 23 years and had reached the age of 50. Under 5 U.S.C. § 8336(d)(1) (West 2001), employees who lose their job or involuntarily "separate" from government service "after becoming 50 years of age and completing 20 years of service" may receive a discontinued service annuity unless their separation resulted from "removal for cause on charges of misconduct." In a letter dated March 27, 2000, DIA's personnel office notified OPM that it had removed Yuriditsky "due to failure to meet a condition of employment (security clearance)." The letter adds that absent the "loss of security clearance, there would be no basis (performance or conduct) to remove Mr. Yuriditsky from employment at this time."

Yuriditsky thereafter applied for the discontinued service annuity mentioned above but the OPM denied his application, finding that the documents in Yuriditsky's file showed that DIA had removed him not only because of the revocation of his security clearance, but also "because of criminal and personal misconduct, which led to the revocation." Following a hearing, the Board affirmed. In so doing, the Board noted that while Yuriditsky had described some of the allegations contained in these documents as either "inaccurate or exaggerated," he had also admitted to the 1998 conviction and "brief jail sentence" for assault. In addition, the Board considered Yuriditsky's assertion that he had pled guilty to this charge only because counsel and the DIA had advised him to do so. "Nevertheless," the Board stated, the evidence still showed that Yuriditsky's removal rested, "in part, on misconduct to which he had pled guilty."

Here, Yuriditsky first argues that DIA actually removed him because of "whistle blowing actions" relating to the alleged "cover up of the possible causes of Gulf War Syndrome." Neither OPM nor the Board considered this "true reason" for Yuriditsky's removal, he argues. At the same time, the record shows that Yuriditsky never presented this whistle-blowing allegation to the Office of Special Counsel.

Yuriditsky also contends that the OPM and the Board "over ruled" our decision in *Litzenberger v. Office of Personnel Management*, 231 F.3d 1333 (Fed.Cir.2000) because, as we understand his argument, OPM had failed to provide him with the criteria it uses to determine "what conduct disqualifies an employee from receiving" a discontinued service annuity. Last, Yuriditsky argues that the Board erroneously "allowed OPM to pursue hearsay and speculative lines of questioning at [his] hearing" and that "DIA's General Counsel and [his] immediate supervisor advised [him] to accept a plea bargain rather than go to trial." In a similar vein, he claims that the Board also denied him the opportunity to call an "OPM Benefits Specialist" as a witness who "could have testified that he was going to approve [Yuriditsky's application for a discontinued service annuity] until a DIA representative cautioned him against doing so."

## Discussion

We play only a limited role in reviewing Board decisions. *See, e.g., Deweese v. Tennessee Valley Auth.*, 35 F.3d 538, 541 (Fed.Cir.1994). Under 5 U.S.C. § 7703(c), we may reverse the Board only if its decision was: (1) arbitrary, capricious, an abuse of discretion or not in accordance with law; (2) obtained without the procedures required by law; or (3) not supported by substantial evidence. 5 U.S.C.

§ 7703(c). None of these limited grounds was shown here.

▆ First, Yuriditsky has given us no reason to believe that the Board here had failed to consider his argument that his "whistle blowing" activities actually led to his dismissal. Indeed, "absent specific evidence indicating otherwise," we presume that a fact finder (like the Board) reviewed all the evidence contained in the record, regardless of whether or not it expressly discussed that evidence. *See, e.g., Gonzales v. West*, 218 F.3d 1378, 1381 (Fed. Cir.2000). And we agree with the government that this presumption seems particularly appropriate in this case, given that the Board would not have had jurisdiction to consider a whistleblower's action even if Yuriditsky had separately filed one. *See Ward v. Merit Sys. Prot. Bd.*, 981 F.2d 521, 526 (Fed.Cir.1992) (Board has jurisdiction over whistleblower's action only if petitioner first specified the exact grounds of wrongdoing to the Office of Special Counsel). In the end, it seems just as likely that the Board considered this argument but thought it unnecessary to address in a written opinion. In either event, we discern no error with that decision.

▆ Second, neither the Board nor the OPM "over ruled" or misinterpreted our decision in *Litzenberger v. Office of Personnel Management*. There, we held that OPM and the Board erred when neither had verified in the first place or reviewed in the second whether the record actually showed the "misconduct" that could serve as the basis for denying a discontinued service annuity. 231 F.3d at 1336–37 ("OPM could not decide that the removal was for misconduct, a ground not mentioned by the [employing agency], without confronting the issue of privileged testimony. OPM did not do so; and the Board erred in not reviewing this issue.").

Here, on the other hand, OPM and the Board both satisfied their respective roles. As shown by its decision denying the discontinued service annuity, OPM evaluated the record and verified that Yuriditsky's criminal and personal conduct did indeed lead to the revocation of his security clearance, which in turn led to his automatic dismissal. For its part, the Board did consider the grounds for revocation and finding of "misconduct," and it determined that notwithstanding Yuriditsky's other allegations, Yuriditsky did admit to the conviction that justified the revocation of his clearance and concomitant removal. We believe the Board's decision, though surely not a paradigm of thoroughness, nevertheless indicated that it had sufficiently reviewed this issue.

We note, too, that neither *Litzenberger* nor any other authority cited to us required the DIA or OPM to present in advance the written "criteria" for delineating the specific "misconduct" that could render an employee ineligible for a discontinued service annuity. To the contrary, *Litzenberger* merely instructs that OPM and the Board must simply verify and review the grounds cited for the underlying "misconduct." *See id.*

In addition, substantial evidence supports the Board's finding that DIA had ultimately removed Yuriditsky for misconduct. As noted, the record contains evidence showing that Yuriditsky had committed several acts—both criminal and otherwise—that called into question his character and suitability for both the workplace and for a position involving "National security." Stated differently, the record contains sufficient evidence showing that Yuriditsky had committed the "misconduct" that could have rendered him ineligible to receive an annuity. And while he challenged some of these grounds for misconduct as either false or "exaggerated," he did admit to the 1998 conviction

that formed at least part of the underlying basis for revoking his clearance and for finding "misconduct."

That some evidence in the record, including the March 27, 2000, letter from DIA's personnel office to the OPM, implies that DIA may not have removed Yuriditsky solely for misconduct cannot change our conclusion. "Substantial evidence," the standard of review that we must use here, means evidence sufficient to support a conclusion, even if other evidence in the record could detract from that conclusion. *See In re Gartside*, 203 F.3d 1305, 1312 (Fed.Cir.2000). Again, that evidence (including Yuriditsky's own testimony) supports the conclusion drawn by the Board here, even if a letter could suggest otherwise. In that situation, we must also leave it to the Board to weigh the conflicting evidence and make the final evidentiary determinations.

Finally, we simply cannot identify, from either the record or the arguments presented, any relevant "hearsay and speculative lines of questioning" to which Yuriditsky objects. Regardless, the evidence cited in the record, including Yuriditsky's own testimony, does pass "substantial evidence" muster. In our view, the Board did not have to believe every ground cited by OPM or DIA in order to uphold the "misconduct" finding. And nor did it have to accept Yuriditsky's argument about pleading guilty to the 1998 assault only because the DIA and counsel had urged him to do so. Yuriditsky pled guilty to the offense, which by itself could have ended the Board's inquiry about whether he had committed "misconduct" and had thereby become ineligible to receive the annuity at issue. The Board simply had no obligation to ferret out, much less discuss, *every* theory of whether a criminal act or "misconduct" did or did not occur here. Under *Litzenberger*, it merely had to determine whether DIA had removed Yuriditsky for misconduct and assess whether OPM had so verified. It did.

Similarly, nothing before us explains or shows the circumstances in which the Board allegedly denied Yuriditsky the opportunity to call an "OPM Benefits Specialist" as a witness. But this bald allegation alone cannot warrant reversal either, for even if this witness did testify, we do not understand how that would have undermined the Board's conclusion. After all, nothing in Yuriditsky's description of the proposed testimony shows that this witness knew anything more about the facts than any other reviewing tribunal or office. In other words, the "opinion" this witness would have purportedly offered appeared to rely on nothing more than speculation or hearsay. Again, this assertion does not disturb either the Board's finding or our conclusion that substantial evidence supports its ultimate finding.

For the reasons stated above, the decision of the Board is affirmed.