## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DERIK F. HALLER, | DOCKET NUMBER |
| Appellant, | CB-7121-20-0002-V-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: September 4, 2024 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Heidi R. Burakiewicz</u>, Esquire, and <u>Robert DePriest</u>, Esquire, Washington, D.C., for the appellant.

<u>Megan E. Gagnon</u>, Esquire, Detroit, Michigan, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## FINAL ORDER

¶1 The appellant has filed a request for review of an arbitration decision that sustained the agency's decision to remove him. For the reasons discussed below, we GRANT the appellant's request for review under 5 U.S.C. § 7121(d),

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REVERSE the arbitrator's finding that the agency proved its charge, and ORDER the agency to cancel the appellant's removal.

## BACKGROUND

¶2 The appellant was employed as a cartographer, GS-12, with the U.S. Customs and Border Protection, Office of Border Patrol. Request for Review (RFR) File, Tab 7 at 108. Part of his duties required him to respond to requests to provide cartographic, analytical, and data management services, advice and support, and to do so on immediate deadlines. *Id*. at 110-11. On November 7, 2017, following a series of attendance and leave-related issues, the agency issued the appellant a leave restriction memorandum requiring him to submit a Standard Form (SF) 71 with a medical certificate for all sick leave requested due to illness, and informing him of what he was required to obtain in order for his medical documentation to be deemed satisfactory. *Id*. at 125-27. Specifically, the memorandum required that the appellant's medical documentation include his name, a statement that he was incapacitated for duty and why reporting for duty was inadvisable, the nature of the incapacitation, the duration of incapacitation and dates of office visits, and a physician's signature, address, and telephone number. *Id*. at 126-27. The memorandum also informed him that, if necessary, additional information may be requested in support of any final decision to approve or deny leave. *Id*. at 127. It stated that the requirements would be effective for 6 months. *Id*. at 126. Approximately 6 months later, following more attendance and leave-related issues, the agency extended the requirements of the November 7, 2017 memorandum. *Id*. at 149.

¶3 On Friday, July 6, 2018, the appellant called his supervisor stating that he did not feel well and requesting sick leave for the day. RFR File, Tab 6 at 140 (testimony of the appellant), Tab 7 at 161. The supervisor provisionally granted the appellant's sick leave request and reminded him of the requirement that he provide acceptable medical documentation to support his absence. RFR File,

Tab 7 at 162. On Monday, July 9, 2018, the appellant again requested sick leave and was reminded of the requirement to provide acceptable medical information for both his July 6 and July 9 absences. *Id*. On July 10, 2018, the appellant called his supervisor stating that he was still ill, had medical documentation supporting his requests for sick leave, and had been diagnosed with an ear infection. *Id*.

¶4    The next day, July 11, 2018, the appellant reported for duty and provided his supervisor with medical documentation from an urgent care facility, wherein a Certified Nurse Practitioner (CNP) indicated that the appellant had been seen in her urgent care facility on July 9, 2018, and requested that he be excused from work on July 9 and July 10, 2018. *Id*. at 162, 164. Because the documentation did not address the appellant's absence on July 6, 2018, the appellant's supervisor asked him if he had any additional documentation related to that day and further indicated that the medical documentation was not sufficient to meet the requirements of the leave restriction memorandum for July 9 and July 10, 2018, because it failed to identify the nature of his incapacitation and to explain why reporting to work was inadvisable. *Id*. at 162-63. According to the appellant, he returned to the urgent care facility to request further documentation. RFR File, Tab 6 at 143 (testimony of the appellant). He testified at the arbitration hearing that the only additional medical documentation the urgent care facility provided him with was the administrative notes from his visit on July 9, 2018, which reflected that his symptoms had begun on July 4, 2018. *Id*.; RFR File, Tab 7 at 165-69.

¶5    On July 17, 2018, the appellant submitted a memorandum to his supervisor explaining his absence on July 6, 2018. RFR File, Tab 7 at 161. It does not appear that agency management responded to the appellant's memorandum, but on July 19, 2018, the appellant's supervisor sent a memorandum to the Acting Patrol Agent in Charge, summarizing the appellant's absences from July 6 through July 10, 2018, and indicating that the additional medical

documentation still did not meet the requirements outlined in the leave restriction memorandum. *Id*. at 163. The appellant's supervisor also claimed in the July 19, 2018 memorandum that he had informed the appellant that he would be carried in "absence without leave" (AWOL) status for July 6, 9, and 10, 2018. *Id*.

¶6      Three months later, the agency proposed the appellant's removal based on a single specification of AWOL and a single specification of failure to follow leave restriction instructions. RFR File, Tab 8 at 4. Both charges related only to the appellant's absence on July 6, 2018; he was not charged with any absence-related misconduct for July 9 and July 10. *Id*. Following the appellant's written and oral replies, the deciding official sustained both charges and, citing the appellant's history with time and attendance issues, removed the appellant from Federal service. *Id*. at 23.

¶7      The appellant's union grieved the removal action and invoked arbitration on his behalf, arguing as follows: (1) the agency could not prove the charged misconduct because the appellant provided sufficient medical documentation as instructed by the leave restriction memorandum and because he was charged sick leave and paid for the day in question; (2) the charges of AWOL and failure to follow leave restriction instructions should be merged because they are based on the same facts and issues; (3) the agency violated his due process rights when it improperly considered alleged misconduct that occurred on June 20, 2018, in the final decision but failed to discuss that incident in the proposal; (4) the agency engaged in disparate treatment disability discrimination and failed to accommodate his disability; and (5) the penalty of removal was unreasonable. RFR File, Tab 6 at 208-11, 218-51; Tab 8 at 27-28.

¶8      Following an arbitration hearing, the arbitrator issued an opinion and award sustaining the appellant's removal. RFR File, Tab 6 at 282-314. He declined to merge the charges and found that the agency proved both charges by preponderant evidence. *Id*. at 303-06. Specifically, he found that the appellant was required to

go to the doctor for each "sick day event," and that because he failed to do so, and also failed to provide adequate medical documentation, the agency established that he violated the leave restriction memorandum's requirements. *Id*. at 303-04. He further found that the appellant failed to establish his affirmative defenses of an alleged due process violation and disability discrimination, and that his removal promoted the efficiency of the service and was reasonable. *Id*. at 305-06, 312-14.

¶9 The appellant has requested review of the arbitrator's opinion and award. RFR File, Tabs 1, 5. He argues that the arbitrator misinterpreted civil service sick leave requirements and incorrectly added a "nonexistent" requirement that the appellant was required to go to his doctor on July 6, 2018. RFR File, Tab 5 at 10-11, 31-33. He also reasserts his claims that his medical documentation was sufficient and that he was charged sick leave and was paid for his July 6, 2018 absence. *Id*. at 29-31. He reiterates his claim that the charges should have been merged and his affirmative defenses of an alleged due process violation, disparate treatment disability discrimination, and failure to accommodate disability discrimination, and he claims that the arbitrator misapplied the *Douglas* factors. *Id*. at 11-15, 33-47. The agency has responded in opposition to the appellant's request. RFR File, Tab 15.

## ANALYSIS

¶10 The Board has jurisdiction to review an arbitrator's decision under 5 U.S.C. § 7121(d) when the subject matter of the grievance is one over which the Board has jurisdiction, the appellant has alleged discrimination under 5 U.S.C. § 2302(b)(1) in connection with the underlying action, and a final decision has been issued. *Sadiq v. Department of Veterans Affairs*, 119 M.S.P.R. 450, ¶ 4 (2013). Each condition is satisfied in this case. The appellant's removal is within the Board's jurisdiction. 5 U.S.C. §§ 7512(1), 7513(d). The appellant alleged in his grievance and during arbitration that he was subjected to discrimination on the basis of his disability when the agency treated him differently than other

employees who did not suffer from alcoholism. RFR File, Tab 6 at 245-51; Tab 8 at 27. The arbitrator issued a September 24, 2019 final decision regarding the appellant's grievance of his removal. RFR File, Tab 6 at 282-314. Thus, we find that the Board has jurisdiction over the request for review. *See Sadiq*, 119 M.S.P.R. 450, ¶ 4.

¶11     The Board's review of an arbitrator's award is limited; such awards are entitled to a greater degree of deference than initial decisions issued by the Board's administrative judges. *Id.*, ¶ 5. The Board will modify or set aside such an award only when the arbitrator has erred as a matter of law in interpreting a civil service law, rule, or regulation. *Id.* Even if the Board disagrees with an arbitrator's decision, absent legal error, the Board cannot substitute its conclusions for those of the arbitrator. *Id.* Thus, the arbitrator's factual determinations are entitled to deference unless the arbitrator erred in his legal analysis, for example, by misallocating the burdens of proof or employing the wrong analytical framework. *Id.* Nevertheless, the Board can defer to the arbitrator's findings and conclusions only if the arbitrator makes specific findings on the issues in question. *Id.* Further, the Board may make its own findings when the arbitrator failed to cite any legal standard or employ any analytical framework for his evaluation of the evidence. *Id.*

The arbitrator erred in not merging the charges.

¶12     As noted above, the agency charged the appellant with AWOL and failure to follow leave restriction instructions. RFR File, Tab 8 at 4, 23. Before the arbitrator, the appellant argued that because the charges were both based on his July 6, 2018 absence, they should have been merged. RFR File, Tab 6 at 222-24. In the opinion and award, the arbitrator stated that, "[e]ven if the offenses overlap, prejudice to [the appellant] was not established. The charges, either individually or together, provide a basis for the [agency's] action in this case. Moreover, there does seem to be a distinction between the two charges."

RFR File, Tab 6 at 305-06.  The appellant raises this issue again in his request for review.  RFR File, Tab 5 at 46-47.  Because the arbitrator failed to fully and adequately determine whether the charges should be merged, we make our own findings on this issue.  *See Sadiq*, 119 M.S.P.R. 450, ¶ 5.

¶13    The Board will "merge" charges if they are based on the same conduct and proof of one charge automatically constitutes proof of the other charge.  *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 10 (2014).  In the context of AWOL and failure to follow instructions of a leave restriction letter charges, the Board has held that, when both charges are based on the same underlying conduct and an appellant's failure to follow instructions and provide the medical documentation caused him to be AWOL, the charges merge.  *See Jones v. Department of Justice*, 98 M.S.P.R. 86, ¶ 16 (2004), *review dismissed*, 125 F. App'x 1006 (Fed. Cir. 2005).  Here, the agency charged the appellant with AWOL on July 6, 2018, because he failed to provide adequate medical documentation regarding his absence on that date pursuant to the leave restriction letter.  RFR File, Tab 8 at 4, 23.  The agency also charged him with failure to follow the leave restriction letter on that same date.  *Id*.  Therefore, we find that it is appropriate to merge the failure to follow leave restriction instructions charge into the AWOL charge.  *See McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶ 4 n.3 (2014) (finding that the administrative judge properly merged into the AWOL charge specific instances of failure to follow leave restriction letter procedures that were also listed under the AWOL charge); *Westmoreland v. Department of Veterans Affairs*, 83 M.S.P.R. 625, ¶ 6 (1999) (merging charges of failure to follow leave-requesting procedures into the charge of AWOL when the charge of AWOL was based solely on the appellant's failure to follow the leave requesting procedures), *aff'd*, 19 F. App'x 868 (Fed. Cir. 2001), *overruled on other grounds as recognized in Pickett v. Department of Agriculture*, 116 M.S.P.R. 439, ¶ 11 (2011).  Because the failure to follow the leave restriction letter charge merges into the AWOL charge, proof of the AWOL charge will constitute proof of the

failure to follow the leave restriction letter charge. *See Powell*, 122 M.S.P.R. 60, ¶ 10.

Regardless of whether the appellant's medical documentation was sufficient to justify his absence on July 6, 2018, the arbitrator failed to make a material finding of fact regarding whether the agency denied the appellant sick leave for that day.

¶14    To prove a charge of AWOL, an agency must show by preponderant evidence that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 28 (2015), *overruled in part on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 25. Regarding the first requirement, the arbitrator concluded that the agency proved that the appellant violated the requirement of the leave restriction memorandum that he obtain medical documentation for his July 6, 2018 absence and was, therefore, absent without authorization. RFR File, Tab 6 at 303-04. He appears to have based this conclusion on two findings: (1) the leave restriction memorandum required the appellant to visit a doctor for "each sick day event," and the appellant failed to go to the doctor when he called in sick on July 6, 2018; and (2) the appellant's medical documentation was otherwise inadequate because the July 9, 2018 letter from the CNP excused only his absences from July 9 and 10, 2018, and the administrative notes from his July 9, 2018 visit to the urgent care facility "represent[] a description of [the appellant's] complaint, not a medical diagnosis." *Id*. at 303-04.

¶15    In his request for review, the appellant argues that the arbitrator applied an "incorrect and overly burdensome standard for using sick leave that imposed an obligation beyond the requirements of 5 C.F.R. § 630.401(a) and [his] leave restriction letter." RFR File, Tab 5 at 29. He argues that, when an employee provides sufficient medical documentation and he has sick leave available, an agency must grant sick leave. *Id*. He asserts that the arbitrator violated civil service law when he determined that the appellant was required to visit a doctor

each sick day because the Federal regulation governing the granting of sick leave imposes no such requirement. *Id*. at 31-33. He also claims that his medical documentation was sufficient. *Id*. at 30.

¶16    We agree with the appellant that neither Federal regulation nor his leave restriction memorandum required that he visit the doctor on each sick day. *See* 5 C.F.R. §§ 630.401, 630.405; RFR File, Tab 7 at 126-27, 149-50. However, the arbitrator's determination that the agency proved the charges is also based on his finding that the appellant's sick leave documentation was not sufficient because it did not specifically address his illness on July 6, 2018, or contain a medical diagnosis. RFR File, Tab 6 at 303-04. The appellant's argument that his medical documentation was sufficient because he provided an official memorandum stating that he was sick when he returned to work, a medical note from a CNP asking that he be excused from duty due to illness on July 9 and July 10, and the administrative notes reflecting that he had been experiencing symptoms beginning on July 4, 2018, amounts to a disagreement with the arbitrator's factual determinations. RFR File, Tab 5 at 21-22, Tab 6 at 304. Even if we disagreed with his factual findings, as stated above, we cannot substitute our conclusions for his because they are entitled to deference unless he erred in his legal analysis. *Sadiq*, 119 M.S.P.R. 450, ¶ 5. We discern no legal error in his analysis of the sufficiency of the medical documentation.

¶17    Nonetheless, as discussed above, to prove an AWOL charge, the agency must also prove that a leave request was properly denied. *Savage*, 122 M.S.P.R. 612, ¶ 28. Inherent in this burden is the requirement that the agency prove that it actually denied the leave request at all, regardless of whether the appellant's medical documentation was adequate. Before the arbitrator and again in his request for review, the appellant claims that he was ultimately charged 8 hours of sick leave for July 6, 2018, and that his paycheck reflected his regular pay for the pay period including that day. RFR File, Tab 5 at 22-23, Tab 6 at 211. The arbitrator did not address this material issue in the opinion and award. RFR File,

Tab 6 at 301-04. Accordingly, we address it here. *See Hollingsworth v. Department of Commerce*, 115 M.S.P.R. 636, ¶ 8 (2011) (reasoning that an arbitrator's failure to analyze a material issue constitutes legal error, which permits the Board to make its own findings).

> *The agency failed to prove that it denied the appellant's leave request and, therefore, failed to prove its charge.*

¶18    In examining the record to determine whether the agency proved that it denied the appellant's sick leave request for July 6, 2018, we note that, as an initial matter, it is undisputed that the appellant's supervisor provisionally granted his sick leave request. RFR File, Tab 7 at 162. The question the Board must decide is whether the agency ever changed that designation to AWOL. We find there to be contradictory evidence on this point. On the one hand, the July 19, 2018 memorandum from the appellant's supervisor to the Acting Patrol Agent in Charge states that he informed the appellant that he "would be carried in an AWOL status on July 6, 2018." RFR File, Tab 7 at 163. We also acknowledge that the appellant's time and attendance records show that on July 6, 2018, he was coded as "72," which is the agency's code for "absent without pay." RFR File, Tab 6 at 138 (testimony of the appellant), Tab 9 at 4, 7-8. Notably, the appellant's time and attendance records do not show any code for sick leave.[2] RFR File, Tab 9 at 4, 7-9. On the other hand, the appellant's earnings and leave statements for the pay period in question show that he was charged 8 hours of sick leave. RFR File, Tab 12 at 22. Because this earnings and leave statement credits the appellant with an 80-hour pay period during which he was otherwise in regular time, annual leave, or holiday pay, and there is no other record of the appellant using sick leave during that pay period apart from July 6, 2018, we conclude that the sick leave charged to the appellant was for July 6, 2018, consistent with his supervisor's indication that his sick leave request was provisionally granted. *Id*. Moreover, the appellant testified that he did not lose

---

[2] The code for sick leave is "62." RFR File, Tab 9 at 42.

any pay for the relevant pay period. RFR File, Tab 6 at 145-46 (testimony of the appellant). This unrebutted testimony is supported by documentation from his credit union showing the same salary amount deposited for the pay period in question and the previous pay period.[3] RFR File, Tab 12 at 24. The appellant's receipt of full pay for the pay period is consistent with a finding that his attendance status was never changed to AWOL, which would have prompted reduced pay.

¶19    We emphasize that it is the agency's burden to prove the charge by preponderant evidence. *See* 5 U.S.C. § 7701(c)(1)(B). This includes its obligation to rebut, by preponderant evidence, testimony by an employee or other record evidence contesting the charge by putting forth contrary evidence. *See Rudnick v. General Services Administration*, 11 M.S.P.R. 247, 250 (1982) (reasoning that the agency's burden to prove a removal action by preponderant evidence never shifts and that it must rebut testimony or evidence put forth by an employee either by impeachment or contrary evidence). Here, the appellant has consistently argued that he ultimately was not placed in an AWOL status, and, as discussed above, he submitted the evidence supporting that assertion. RFR File, Tab 5 at 22-23, Tab 6 at 211. Despite having the opportunity—on several occasions—the agency has not explained why the appellant was charged sick leave during the relevant pay period or why his pay was not affected for the pay period it asserts he was AWOL. At the very least, the agency has not resolved the inconsistent evidence of record. In such a circumstance, we find that the agency has failed to prove that it is more likely than not that it denied the appellant's sick leave request, rendering him AWOL. *See Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (explaining that, when the evidence is evenly balanced, the party with the burden of persuasion must lose); *Knudsen v. Department of Health*

---

[3] The appellant's pay for the pay period following the one in question appears to have increased, but that increase seems to be the result of a within grade increase that became effective at the beginning of the pay period following the one in question. RFR File, Tab 6 at 148 (testimony of the appellant), Tab 12 at 21-24.

*& Human Services*, 35 F.3d 542, 550 (Fed. Cir. 1994) (concluding that, when the evidence is in "equipoise," the party with the burden of persuasion has failed to meet its burden); *Jaramillo v. Department of the Army*, 81 M.S.P.R. 469, ¶ 7 (1999); *Vasquez v. Department of the Navy*, 27 M.S.P.R. 312, 315 (1985). Accordingly, we find that the agency failed to prove its charge by preponderant evidence.

<u>Although the arbitrator failed to make any finding regarding whether the appellant is a qualified individual with a disability and regarding the appellant's failure to accommodate disability discrimination claim, and although he was unable to apply the Board's most recent precedent to the appellant's disparate treatment disability discrimination claim, we ultimately agree with the arbitrator that the appellant failed to establish his disability discrimination affirmative defense.</u>

¶20    Before the arbitrator, the appellant claimed that he suffered from alcoholism, that the Equal Employment Opportunity Committee (EEOC) has recognized alcoholism as a disability, and that the agency engaged in disparate treatment disability discrimination and failed to accommodate his disability. RFR File, Tab 6 at 246-51. Specifically, he asserted that the agency treated him less favorably than nondisabled employees with a history of more significant attendance issues and that the agency could have accommodated him by offering him the opportunity to get treatment before removing him. *Id*. at 247-51.

¶21    The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act of 1973. *Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶ 35. The standards under the Americans with Disabilities Act of 1990 (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. 29 U.S.C. § 791(f); *Pridgen*, 2022 MSPB 31, ¶ 35. The ADAAA provides that it is illegal for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C.

§ 12112(a); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28. A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28. Only an otherwise qualified individual with a disability is entitled to relief under the statute for a claim of status-based discrimination or denial of reasonable accommodation. *Haas*, 2022 MSPB 36, ¶ 29.

¶22 The arbitrator did not make any factual findings regarding whether the appellant was a qualified individual with a disability. Because the record appears to be sufficiently developed on this issue, we make our own finding on this point. *See Sadiq*, 119 M.S.P.R. 450, ¶ 5; *Sands v. Department of Labor*, 88 M.S.P.R. 281, ¶ 8 (2001) (reasoning that, when the record is fully developed and credibility determinations are not necessary for the Board to make a factual finding and it is otherwise unable to defer to an arbitrator's finding, the Board will examine the record evidence and submissions on review to resolve an issue). Neither party disputes that the appellant is a recovering alcoholic who was seeking treatment during the relevant time period, RFR File, Tab 6 at 45 (testimony of the appellant's supervisor), 111 (testimony of the deciding official), 133 (testimony of the appellant), and alcoholism is generally considered a disability within the meaning of the Rehabilitation Act, as amended by the ADA, *see* 42 U.S.C. § 12114(b)(2) (providing that nothing excludes an alcoholic from being considered a qualified individual with a disability when he is either currently participating in a supervised rehabilitation program or when he is no longer engaging in such use); *see also Humphrey v. Department of the Army*, 76 M.S.P.R. 519, 524 (1997) (stating that alcoholism has been recognized to be a disability under the law); *Walsh v. U.S. Postal Service*, 74 M.S.P.R. 627, 631 (1997) (agreeing with an administrative judge that the Board has long held that alcoholism is a disabling condition). Additionally, the appellant's performance was regarded as "successful" or "acceptable." RFR File, Tab 6 at 108, 111

(testimony of the deciding official), 128 (testimony of the appellant); Tab 12 at 14-19. We, therefore, find that he was a qualified individual with a disability.

> *The appellant failed to establish a claim of disparate treatment disability discrimination under Pridgen.*

¶23　　As previously discussed, the appellant argued below that he was treated less favorably than other nondisabled employees with a history of more significant attendance issues. RFR File, Tab 6 at 250. At the hearing, a union representative testified that he was aware of other employees with attendance issues, including one who regularly maintained a negative leave balance, but that none were disciplined for leave abuse. *Id*. at 180 (testimony of union official). In the opinion and award, the arbitrator determined that there was "insufficient evidence to conclude that employees with similar attendance records to [the appellant] were not disciplined" or that the appellant was removed "because of his alcoholism." RFR File, Tab 6 at 313. He concluded that "[d]isability discrimination was not established." *Id*. In his request for review, the appellant reasserts his disparate treatment disability discrimination claim and argues that the arbitrator ignored comparators and did not apply the "correct standard" in evaluating this claim. RFR File, Tab 5 at 40-44.

¶24　　After the arbitrator issued the opinion and award, the Board clarified the standards for a disability discrimination disparate treatment claim. Specifically, we recognized that such claims are subject to the same analytical framework for discrimination claims arising under Title VII. *Pridgen*, 2022 MSPB 31 ¶ 42. An appellant raising an affirmative defense of disparate treatment under Title VII bears the burden of proving by preponderant evidence that the prohibited consideration was a motivating factor in the agency's action or decision. *Id*., ¶¶ 20-22. However, to obtain full relief under the statute, including status quo ante relief, he must show that the discrimination was a but-for cause of the contested action or decision. *Id*.

¶25    We understand that the arbitrator did not have the benefit of our analysis in *Pridgen* when he issued the opinion and award, but we find his disparate treatment disability discrimination claim analysis otherwise insufficient for us to determine whether the appellant met either standard set forth in that case. RFR File, Tab 6 at 312-12.  Because the record is sufficiently developed on this issue, we decide it here.  *See Sadiq*, 119 M.S.P.R. 450, ¶ 5; *Sands*, 88 M.S.P.R. 281, ¶ 8.

¶26    The methods by which an appellant may prove a claim of discrimination are: (1) direct evidence; (2) circumstantial evidence, which may include (a) evidence of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces form which an inference of discriminatory intent might be drawn, also known as "convincing mosaic"; (b) comparator evidence, consisting of evidence, whether or not rigorously statistical, that employees similarly situated to the appellant other than in the characteristic on which an employee is forbidden to base a difference in treatment received systematically better treatment; (c) evidence that the agency's stated reason for its action is unworthy of believe, a mere pretext for discrimination; and (3) some combination of direct and indirect evidence. *Pridgen*, 2022 MSPB 31, ¶ 24.

¶27    To reiterate the appellant's argument regarding disparate treatment discrimination, the appellant asserts that his supervisors "targeted" him and that there were several other employees who engaged in the same or similar misconduct and were not removed.  RFR File, Tab 6 at 202-03, 206-07, 214-16, 236-240.  Regarding his claim that he was targeted, the appellant points to testimony from a union steward who claimed that the appellant's supervisors did not talk to him or eat lunch with him and always asked him to write memoranda for "whatever he did wrong."  *Id*. at 167 (testimony of the union steward), 206. The union steward further testified that he was told to "mind what [he] said and did around [the appellant] because he wasn't going to be there very long."  *Id*.

at 166 (testimony of the union steward). As it relates to the appellant's alcoholism, the union steward testified that on at least one occasion, despite having a positive leave balance, the appellant's supervisors initiated a "surveillance operation" on the appellant, asking employees to observe him to see whether he had been drinking. *Id*. at 168-69 (testimony of the union steward), 206, 217, 242.

¶28    We do not believe the above creates a "convincing mosaic" of discrimination. *See Pridgen*, 2022 MSPB 31, ¶ 24. The appellant does not appear to have presented any specific evidence regarding when these conversations or "surveillance operation" occurred, nor is there any corroborating testimony or other evidence establishing that they occurred. Notably, the union steward testified that he witnessed a conversation among three individuals regarding the alleged surveillance operation, yet none of the three testified as parties to the conversations.[4] RFR File, Tab 6 at 168 (testimony of the union steward). In any event, to the extent the conversations occurred as testified, the record is otherwise replete with evidence that the agency was sympathetic to the appellant's struggle with alcohol. The appellant's supervisor testified that the agency offered him assistance with the Employee Assistance Program (EAP) and other peer assistance. *Id*. at 35-36 (testimony of the appellant's supervisor). He also testified that he personally offered to look into a rehabilitation facility to help the appellant with his alcoholism, but the appellant declined. *Id*. at 36 (testimony of the appellant's supervisor). Additionally, the appellant's supervisor further testified that he gave the appellant a ride home one day after the appellant smelled of alcohol while on duty because he lacked a support system to assist him, and that the agency always gave him a ride when he was sent home. *Id*. at 36-39 (testimony of the appellant's supervisor). Although it is unclear

---

[4] Although the appellant's supervisor, who was a party to this alleged conversation, testified during the arbitration, appellant's counsel did not ask him any questions on cross examination about any alleged surveillance of the appellant. RFR File, Tab 6 at 41-48.

whether the events related to the appellant's alcoholism, the supervisor also testified that he would give the appellant a ride to medical appointments and had offered to pay the appellant's co-pay when he was "short on cash." *Id*. at 36-37 (testimony of the appellant's supervisor). To the extent the agency acted on concerns that the appellant was intoxicated while on duty, neither the Rehabilitation Act nor the ADA immunizes a disabled employee from being disciplined for misconduct in the workplace, provided the agency would impose the same discipline on an employee without a disability. *Burton v. U.S. Postal Service*, 112 M.S.P.R. 115, ¶ 16 (2009).

¶29 In that regard, we turn to the appellant's argument that the agency treated him less favorably than other similarly situated employees due to his disability. The appellant puts forth four individuals who, he asserts, have been disciplined less severely for similar or more severe misconduct. RFR File, Tab 6 at 214-16. To be similarly situated for purposes of a discrimination claim, comparators must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *Pridgen*, 2022 MSPB 31, ¶ 27; *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 37 (2014). Here, three of the four employees identified by the appellant were charged with attendance-related misconduct, while the fourth was charged with conduct unbecoming relating to inappropriate sexual behavior while off-duty. RFR File, Tab 6 at 214-16, Tab 12 at 4-11, 32-56. The appellant has not established, however, that any of the alleged comparators had the same supervisor. To the contrary, based on the limited record evidence, all four employees appear to have been stationed at locations different from one another and from the appellant, making any chance of having the same supervisor unlikely. RFR File, Tab 12 at 32-56. Accordingly, the appellant has not established that these employees were similarly situated to him. *See Pridgen*, 2022 MSPB 31, ¶ 27.

¶30     Based on the foregoing, we find that the appellant failed to prove that his status as a disabled person was a motivating factor in the decision to remove him. *Pridgen*, 2022 MSPB 31, ¶¶ 20-22.

> *The arbitrator failed to make any findings regarding the appellant's failure to accommodate disability discrimination claim, but we nonetheless find that this claim fails.*

¶31     As noted above, the appellant asserted before the arbitrator that the agency failed to accommodate his disability. RFR File, Tab 6 at 247-48. In the opinion and award, the arbitrator briefly acknowledged that the appellant raised a failure to accommodate claim, but he did not provide any discussion of the claim. RFR File, Tab 6 at 312-13. The appellant has raised this affirmative defense again in his request for review. RFR File, Tab 5 at 39-40. Because the record appears to be sufficiently developed on this issue, we make our own findings on this claim. *See Sadiq*, 119 M.S.P.R. 450, ¶ 5; *Sands*, 88 M.S.P.R. 281, ¶ 8.

¶32     An agency is required to make reasonable accommodation to the known and physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that the accommodation would cause an undue hardship on its business operations. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014); 29 C.F.R. § 1630.9(a). Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions. *Miller*, 121 M.S.P.R. 189, ¶ 13. In addition to showing that the appellant is a qualified individual with a disability, as discussed above, he must also show that the agency failed to provide a reasonable accommodation. *Id*.

¶33     Despite the appellant's claim that the agency could have offered him the opportunity to get treatment before removing him, the Board has held that Federal agencies are not required to provide alcoholic employees with a firm choice between rehabilitation and discipline. *See Kimble v. Department of the Navy*,

70 M.S.P.R. 617, 622-23 (1996). Moreover, the appellant testified that he was absent on July 6, 2018, because he was experiencing symptoms which would later result in a diagnosis of an ear infection—not because he was drinking the night before. RFR File, Tab 6 at 139-41 (testimony of the appellant). Thus, his removal was not the result of his disability or the agency's purported failure to accommodate that disability. Accordingly, we find that his reasonable accommodation claim fails.

The arbitrator correctly found that the appellant failed to prove his affirmative defense alleging a due process violation.

¶34    The appellant argued below that the agency violated his due process rights when the deciding official improperly considered allegations of misconduct from a June 20, 2018 incident, which allegedly involved the appellant's use of alcohol, and the agency failed to inform him in the proposal notice that it would be relying on this incident in deciding to remove him. RFR File, Tab 6 at 218-22. He cites the deciding official's testimony from the arbitration hearing where he admits that he considered the June 20, 2018 incident and asserts that it was undisputed that the event was not discussed in the notice of proposed removal. *Id*. at 102-03 (testimony of the deciding official), 221-22.

¶35    In the opinion and award, the arbitrator reasoned that the deciding official's consideration of the June 20, 2018 incident "appears to be a response to the [appellant's] claim of an alcohol issue [in his reply to the proposed removal], rather than as an independent basis for discipline outside of the listed charges." *Id*. at 305. He concluded that the appellant failed to establish a due process violation. *Id*. at 305. In his request for review, the appellant claims that "[i]t is impossible for the [a]rbitrator's analysis to be correct" because the appellant did not raise the affirmative defense of disability discrimination until after the agency proposed his removal and "included inflammatory documents about an alcohol-related incident that were totally unrelated to the substance of the charges against him." RFR File, Tab 5 at 36.

¶36 The essential requirements of constitutional due process for a tenured public employee are notice of the charges against him, an explanation of the evidence, and an opportunity for him to present his account of events. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). The U.S. Court of Appeals for the Federal Circuit has held that a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decision on the merits of a proposed charge or the penalty to be imposed. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011); *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999). To determine if ex parte information is new and material, the Board will consider (1) whether it introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377.

¶37 We agree with the arbitrator that the appellant failed to establish a due process violation. By the appellant's own admission, the agency included "inflammatory documents about an alcohol-related incident" with its notice of proposed removal. RFR File, Tab 5 at 36. He specifically acknowledges that the agency included with its proposal notice six documents from a separate investigation about the June 20, 2018 incident, and that it did so to "show the deciding official information about another potential example of misconduct, which it chose not to include among the charges." *Id*. at 36-37. Although it is undisputed that the agency did not charge the appellant with any misconduct related to the June 20, 2018 incident in the proposal notice, the appellant's admission that he knew of the information and had an opportunity to respond to it prior to his removal establishes that there was no new and material ex parte information that was considered in violation of the appellant's due process rights. *See Stone*, 179 F.3d at 1377.

¶38     Moreover, contrary to the appellant's assertions, the deciding official testified that he considered information surrounding the June 20, 2018 incident as confirmation of the appellant's struggle with alcoholism—not as uncharged misconduct—and that he "focused very much on the charges that were in the proposal letter." RFR File, Tab 6 at 115 (testimony of the deciding official). To the extent the appellant argues that the deciding official violated his due process rights in considering the incident at all, we agree with the arbitrator that it is the appellant who first raised the incident with any particular substance.[5] RFR File, Tab 6 at 305. The Board has held that a deciding official does not violate an employee's right to due process when he considers issues raised by an employee in his response to the proposed adverse action. *See Grimes v. Department of Justice*, 122 M.S.P.R. 36, ¶ 13 (2014) (finding that, when the appellant raised issues in her written and oral replies, the deciding official's consideration of those issues did not violate her right to due process). Accordingly, the appellant's due process affirmative defense is without merit.[6]

We need not address the arbitrator's findings regarding whether the penalty promotes the efficiency of the service and was reasonable.

¶39     Because we have found above that the agency failed to prove its charge, we need not address the appellant's arguments concerning whether the arbitrator's findings regarding the penalty of removal were in accordance with civil service law. RFR File, Tab 5 at 44-46.

---

[5] Although the agency included as background with its proposal notice information concerning the June 20, 2018 incident, it is undisputed that the incident was not discussed in the proposal notice itself as a potential charge or as a part of the proposing official's preliminary penalty determination. RFR File, Tab 8 at 4-7. The appellant has not cited anything limiting what an agency may include as background information with its proposal notice to support its action. The first time the June 20, 2018 incident was mentioned as a particularly relevant issue was in the appellant's response to the proposal notice. RFR File, Tab 8 at 19-20.

[6] The appellant has not argued in his request for review that the circumstances surrounding any consideration of the June 20, 2018 incident constituted harmful error, nor has he identified any agency policy or regulation with which the agency has failed to comply. RFR File, Tab 5 at 33-37.

**ORDER**

¶40    We ORDER the agency to cancel the removal and reinstate the appellant to his position of cartographer, GS-12, effective December 12, 2018. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶41    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶42    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶43    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the Clerk of the Board if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶44    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶45    This is the final decision of the Merit Systems Protection Board in this request for review.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees motion with the Clerk of the Board.

### NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.